Common Pleas Court of Hamilton County

HARRY B. MACE v. CARPENTERS AND JOINERS OF
AMERICA ET AL.

Decided July 12, 1933.

*Hightower & O'Brien,* for the motion.
*John W. Cowell, contra.*

DARBY, J.

At the conclusion of all the evidence in the case the court instructed a verdict for the defendants, which was returned. The principal ground upon which the court placed its decision was that the plaintiff, who was a member of the Brotherhood, had failed and neglected to pursue and exhaust his remedies within the Brotherhood under its Constitution before bringing this action.

The petition in the case was filed November 18, 1931. Subsequently an amended petition was filed, upon which the cause proceeded to trial.

Briefly, the petition set forth that plaintiff was a member of the Brotherhood, and a local branch thereof at Charleston, West Virginia; that about the 28th of July, 1931, he transferred his membership to Cincinnati and was admitted to Local Union No. 2, and having been so admitted, commenced work as a carpenter for The Merritt Concrete Corporation, on the Cincinnati Union Passenger

Terminal; that the District Council is an unincorporated association; that the individual defendants are business managers or officers of the District Council; that on the 30th day of July, 1931, while plaintiff was working under a contract as a carpenter for the Merritt Concrete Corporation, "the defendant Reinke, acting for himself and on behalf of all other defendants known and unknown, procured and brought about the discharge of the plaintiff from said job as aforesaid, by threats of said Reinke to call a strike on said job"; that his discharge was in violation of his right to work, and in violation of his rights under the Constitution of Ohio and of the United States; that by reason of the threats against his life he was compelled to leave Cincinnati, and by reason of the loss of his employment and other wrongs, he has suffered damage in the sum of $25,000.00.

The answer to the amended petition admits the existence of the Union, the District Council, membership of the plaintiff in the local as alleged. The answer avers that while plaintiff was a member of Local No. 2, charges of violation of the trade rules of. the organization were filed against him, that he was in due and legal form brought to trial, convicted and fined $25.00; that he had a right of appeal of which he failed to avail himself, and that he subsequently retransferred his membership to West Virginia where it has continued ever since.

As it may throw some light upon the action of the court, a brief history of the case should be given.

At the April term, 1932, the case was tried by another branch of this court, and submitted to the jury as against the District Council and William J. Reinke only. Under the charge of the court as given, and the explanation of the court as made at that time, the other individual defendants were. dismissed, evidently upon the ground that no act of theirs was shown to have contributed in any way to any of the alleged wrongs of the plaintiff; however, no entry of any kind was made at that time, and no formal order made dismissing the individual defendants other than Reinke. The verdict of the jury was for the plaintiff in the sum of $5,000.00 which, however, upon considera-

tion was set aside on the ground that the verdict is "against the weight of the evidence, and the damages are excessive, appearing to have been given under the influence of passion and prejudice". The case came on again for trial at the January term, 1933, and proceeded as though it were against the District Council and all of the original defendants. When the court instructed a verdict for the defendants, it was as against all of the defendants in the case. It appeared, however, that in the meantime the defendant Arthur M. Williams had died, and there had been no revivor of the case as to him, assuming that he was still in the case.

It seems from an examination of the record, that the trial judge in the course of the charge in the first trial, definitely dismissed the individual defendants other than Reinke, and so stated to counsel at the conclusion of the charge. This fact accounts for the failure to submit forms to the jury except as they related to the District Council and Reinke; therefore the action of the court dismissing them would seem to be conclusive, although no entry were made at the time, and the record fails to disclose any motion on behalf of the plaintiff relating to that order. This situation was not called to the attention of the judge in the second trial until after the evidence had been submitted to the jury.

Certain facts in the case are conceded—namely, the existence of the Brotherhood, of the District Council and of the locals of which the plaintiff had been a member; that the plaintiff was a member of the Brotherhood in West Virginia and applied for and secured a transfer of his membership to Local Union No. 2 in Cincinnati, July 28, 1931; that he went through the steps necessary to secure a transfer to Cincinnati and was admitted to Local Union No. 2; that thereafter, on the day following his admission to said Local No. 2, he went to work on the Cincinnati Terminal job for The Merritt Concrete Corporation; that on the day following, Reinke, as business agent of the union approached the plaintiff on the job, directed him to leave his employment, which plaintiff refused to do, that Reinke thereupon complained to Mr. Burnap, who represented the

general contractor, that Mace was in bad grace with the Union; that thereupon Mr. Burnap called this claim to the attention of Mr. Ingram, representing the Merritt Corporation, as a result of which, and following the complaint of Reinke, plaintiff was laid off. It is further conceded that on the next day, charges were preferred against the plaintiff in writing by Reinke, that plaintiff had violated Rule 16 of the laws of the District Council, in that he had obstructed the Business Agent in the performance of his duties; that regular proceedings followed, a copy of the charges was served upon Mace, he was instructed to appear for the purposes of drawing a trial board, the trial board was drawn in accordance with the Constitution of the Brotherhood, a trial was had at which the plaintiff was present, he was found guilty of having violated the rule referred to and was fined $25.00 which he did not pay, and that subsequently his membership was transferred back to Charleston, West Virginia.

The Constitution of the Brotherhood, so far as applicable to this case, provides under the heading of "Clearance Card" as follows:

"Sec. 46-B, (p. 40) It is compulsory for the member to report and deposit his clearance card at the office of the District Council, or Local Union where no District Council exists, before securing work, pending a meeting of the Local Union, and comply with all local laws. * * *"

Under the head of "Charges and Trials," the Constitution provides, Sec. 55-A, as follows:

"A member must be charged and tried within the jurisdiction of the Local Union or District Council where the offense was committed, a copy of the verdict must be sent to the Local Union of which he is a member. Any Local Union may suspend a member by a three-fourths vote until charges can be preferred against him and he is regularly tried. *A member must exhaust his resources allowed by the Constitution and Laws of the United Brotherhood before taking his case to the civil courts."* (Emphasis ours.)

"B. All charges must be made in writing, and must specify the offense or offenses, and the section of the Constitution and Laws of the United Brotherhood so violated, and be signed by the member or members making such charges.

"C. The charges must be read at the meeting and lay over until the next meeting, and the member must be notified by registered mail by the recording secretary to be present, and at the same time shall be furnished by the recording secretary with a copy of the charges specified. The notice shall be sent to the member's last known address."

Other sections provide for the attendance of the accused, the setting up of the court to try the accusation, the right of challenge of the trial board, the right to defend in person or by counsel, etc.

(It may be said in passing that the records show that these provisions as to the preferring of the charges, the trial notices, etc., were all strictly complied with.) ·

Under the head of "Appeals and Grievances," the Constitution of the Brotherhood provides, Sec. 56-A:

"A member who has a grievance or who has had an injustice done him in any way, or any Local Union, District, State or Provincial Council having any grievance, may appeal to the General President for redress, subject to a further appeal to the General Executive Committee and a final appeal to the General Convention, except violations of Trade Rules; but in no case shall an appeal act as a stay of proceedings, except as provided in the Constitution and Laws of the United Brotherhood.

"B. In case a fine is imposed by the Local Union or District Council ,and an appeal is taken, said fine shall be held by the body assessing the same until said appeal is finally and completely decided.

"C. No appeal can be entertained by the General President where any sum of money in excess of fifty ($50.00) dollars is involved, unless the applicant has first paid to the Local Union or District Council fifty ($50.00) dollars on account, to be held until the appeal is decided by the General President, and if said appeal is decided against the appellant he shall pay the full amount imposed before taking a further appeal. In all cases where the fine is fifty ($50.00) dollars or less, the member fined shall pay the full amount to the Local Union or District Council imposing same.

"D. Any member or subordinate body of the United Brotherhood desiring to take an appeal shall have such appeal made in duplicate. One copy shall be forwarded to the General President and the other copy served *on the member or subordinate body against whom the complaint is made, within thirty days after the date of the action or*

*grievance complained of.* If an appeal is taken from the decision rendered, a notification of said appeal must be sent to the General President within thirty days after the date of the decision made.

"E. When an appeal is taken from the action of a subordinate body there shall be sent to the General President as well as to the appellant in the case, within thirty days, a full and complete copy of the minutes and charges as presented at the trial, together with the answer to the appeal. However, in cases where the act complained of would be in force and effect before the time designated in which to file answer has elapsed the General President is empowered to cause suspension of penalty becoming effective against appellant until answer has been filed and decision rendered." .

The Constitution of the District Council provides for the appointment of various officers including Business Agents, and fixes the duties of such officers. The duties of the Business Agents are set forth in Sec. 9, paragraph D as follows:

"The Business Agents shall endeavor to canvass the entire district at least once a week, and the various mills at least once a month, investigate complaints, establish amicable relations with as many contractors as possible; uphold the morale of the membership, see that apprentices and stewards are receiving just consideration and otherwise do all in their power to further the interest of the United Brotherhood of Carpenters and Joiners of America in this district. The Business Agents shall report to the office several times per day, once at least in person, to confer with the other officers. The Business Agents shall report their activities to the District Council each week. The Business Agents shall receive the minimum rate of wages plus fifteen ($15.00) dollars per week for expenses and not to exceed this amount."

Sec. 16 of the Trade Rules provides:

"Any member obstructing the Business Agents in the lawful discharge of their duties, or who stays at work on any job that is on strike shall be subject to charges and penalized."

Sec. 30 of the same Trade Rules provides:

"It shall be the duty of the Business Agents and the secretary to see that these By-Laws and Trade Rules are strictly enforced throughout the district.

"Violation of any of these Trade Rules or working card rules or the Constitution, shall be subject to charges and removed from the job at the discretion of the Business Agents."

It was conceded that the plaintiff did not conform to the Constitution by making an appeal; that he did not file a copy of an appeal with the District Council, nor did he deposit the fine as provided by the rules.

The disputed matter however, relates to what occurred at the meeting of the District Council when the plaintiff first presented his clearance card and asked to be admitted to Local No. 2; also to what occurred at the time Reinke appeared upon the job and sought the suspension from work of the plaintiff. Other matters of evidence will be referred to.

It was claimed by the plaintiff that when he presented his book for transfer to Local 2 of the District Council, all the individual defendants whose duty it was to pass upon those matters were present; that at that time, Reinke and Williams made certain threats against the plaintiff, and said to him that he would not be permitted to work in this district, that he should return to his home, and that as an outsider if he did not return to his home, violence would be inflicted upon him. It was further in evidence that Reinke at that time stated that some seventy-five to eighty-five per cent of the members of the Local Unions were out of employment, and that there was no room here for persons from outside of the city.

There is no evidence in the case to show that the individual defendants other than Williams (now deceased) and Reinke participated in any such discussion. There was no claim that any of them made any threats of any kind, or urged the plaintiff to leave the city. They were merely present and passed on the matter of his application, which was granted, and he was received into the Local.

All the claims of plaintiff that violence was threatened were denied by the defendants Reinke, Woods and Johnson. (Hall was not a witness in the case, but there was no testimony that he took any part in the discussion.) Their testimony was to the effect that the plaintiff was treated

courteously, and that he paid his dues and was admitted to membership in the Local Union in accordance with the Constitution of the Brotherhood.

There is no claim that any of the defendants, other than Reinke, had anything whatever to do with the transaction from this point on. There is no claim of a conspiracy with Reinke. There is nothing to show that anything was done to instigate Reinke in following up the case, nor in procuring the dismissal of the plaintiff from the work, nor in preferring the charges against the plaintiff, nor in the trial, conviction and fine of the plaintiff.

The members of the Union, which is an unincorporated organization, are not partners, and do not sustain any relationship to one another similar to that of partners. See, *Webster* v. *Tapman, et al,* 9 C. C. (N. S.), 587, affirmed without report (76 O. S., 590). Such members of a voluntary association are responsible for their own acts, and they are also responsible for the acts of others in which they participate, directly or indirectly.

*Devosse et al* v. *Gray et al,* 22 O. S., 159 was a case involving the liability of deacons and trustees of a church which was unincorporated. A building committee. had been appointed for the improvement of a church building, and that committee made a contract with the plaintiffs. Upon failure to pay the balance, the contractors sued Devoss and others as deacons and trustees. It was held in that case:

"The deacons of an unincorporated religious society who are ex-officio agents for the management and control of its property and effects, cannot be held personally liable on a contract made by other agents of the society, unless it be shown that the former participated in the appointment of the latter, or in some way ratified such contract.

"In order to hold a member of such society responsible for its debts, it must be shown that such member in some way sanctioned or acquiesced in their creation."

On p. 170, the court, speaking through Judge McIllvaine say:

"If then, these defendants were only the agents of the society for the management and control of its property and effects, they do not as a matter of law stand in the relation of principles to other agents appointed by the society

to perform some of the duty in respect to its property, nor are they liable for any debt incurred for its improvement except such as may have been made at their request, either express or implied."

This is an action in tort in which it was sought to hold the individual defendants upon the ground that they were the business managers representing Local Unions in the District Council. It does not appear that they were general managers or trustees of the property of the Union or the District Council.

While there may be responsibility for torts in which individuals do not actively participate, that can only be based upon the existence of a conspiracy or the authorization to act. In this case the living individual defendants other than Reinke, did nothing, according to plaintiff's testimony, of an objectionable character. They actually did pass his case, and admit him to the Union, and those defendants had nothing whatever to do with anything which later occurred. Therefore, they were entitled to be dismissed, and even if they were not, and a verdict were returned in their favor, it would be entirely correct because there was no basis for a verdict against them.

In *Lawler* v. *Loewe*, 235 U. S., 522, commonly known as the Danbury Hat Company case, there was an action under the Sherman Anti-Trust Act, and it was held that only those members who were involved in the conspiracy to wrong the plaintiff could be held responsible for his damages. It was stated that that participation in a conspiracy might be inferred from circumstances, but where there was nothing to show, directly or indirectly, participation in such wrong by certain members of the Union, they could not be held responsible.

The case then, requires further investigation of the laws of the Union and the facts in the case, to determine as to whether or not the case should have been submitted to the jury so far as it relates to the actions of the defenant Reinke.

The duty of the plaintiff as to his clearance card in joining Local Union No. 2 is set forth in Sec. 46, paragraph B of the Constitution, which provides:

"It is compulsory for the member to report and deposit his clearance card at the office of the District Council, or Local Union where no District Council exists, before securing work, pending a meeting of the Local Union, and comply with all local laws."

The plaintiff claims that he was under contract with The Merritt Concrete Corporation, before he came to Cincinnati, and that he was transferred by that company from his service in West Virginia to Cincinnati and came here to continue in that employment.

It is significant that this statement rests exclusively upon the evidence of the plaintiff. All the testimony given relating to that subject was given by him, and no officer or employee of the Merritt Concrete Corporation gave any testimony to support that claim.

The plaintiff does not claim that he revealed to Reinke or the other Business Agents that he had a contract with the Merritt Corporation, and the evidence is that he did not reveal such claim. The plaintiff claims that he did not make any effort to secure employment in Cincinnati until after he had "cleared" into Local Union No. 2, but his statements in the deposition, which were offered in evidence, entirely contradict this claim. The deposition, which was called to his attention, while on the witness stand, very clearly states that he was in Cincinnati four or five days before he went to work; that he arrived on Saturday and cleared on Tuesday at the end of July. In answer to a question as to how long he was here before he started to look for work, his answer was: "I looked the first day. Went down there and asked a man for a job and he said he would let me know". This statement made in his deposition not only contradicts his testimony on the witness stand that he did not look for a job, before he had cleared in, but it also flatly contradicts his claim that he had a contract with the Merritt Corporation before he came.

In addition to this, in the testimony of William Austin, who was one of the trial board, this question was asked of him:

"Just what act of Mr. Mace did you consider obstructing a Business Agent?

"A. He first denied coming here and canvassing this district. Mr. Reinke's statement was that he came and canvassed for a job without coming and depositing his clearance card, and Mr. Mace admitted that. He pleaded not guilty, and then he said Mr. Reinke's statement was true, and Mr. Mace further stated that he did not know there was a job going on at the Terminal job when he came in here."

Further evidence relates to the same subject, but it would unduly prolong this opinion to set it forth.

It is highly important, however, to keep in mind the exact situation as bearing upon the actions of Reinke in complaining to Mr. Burnap with reference to the plaintiff, and also in bearing in upon Reinke's good faith or otherwise. There was other testimony that Reinke had stated that he was going to put plaintiff off the job, or railroad him off the job, but all that was denied; however, if as the evidence indicates, by the statements of the plaintiff, he had violated Sec. 46-B, then it would seem that it was not only the province but the duty of the Business Agent to proceed as he did.

When Mr. Reinke complained to Mr. Burnap it was that the plaintiff was in bad grace with the Union for some reason or other, which Mr. Burnap was unable to state, but said it was something with reference to his clearance card or the Constitution. Mr. Reinke does not deny that he did complain because of the conduct of the plaintiff, and it is his claim that he was acting strictly within the Constitution at the time.

The claim of the plaintiff in the case is that regardless of the Constitution of the Brotherhood, he has a cause of action against those who brought about his discharge, claiming that they interfered with his right to work and caused a breach of his contract of employment.

It will be of considerable interest to see what was done by the plaintiff after his discharge, but it will simplify the matter by keeping in mind the provision of Sec. 56-A which provided:

"A member who has a grievance, or who has had an injustice done him in any way    *    *    *    may appeal to the General President for redress.    *    *    *"

There were offered in evidence on behalf of the defendants, certain letters and telegrams.

On July 31st, a day after plaintiff's suspension, he wired the General President merely saying that he had cleared into Local No. 2, commenced work and was called off of the job, and then stated that he had been working for the Merritt Company. That was followed by a letter dated the same day, in which he refers to having cleared in, gotten a job and then been taken off, and asking for action by the General President. On August 2nd he again wired the General President, repeating in a general way what was contained in his former communications. The General President wrote him on August 3rd, acknowledging receipt of his communications and containing the following sentence:

"Please be advised that if you feel an injustice has been done you, it will be necessary for you to avail yourself of your protective rights by appealing against the action in accordance with Sec. 57 of the General Laws".

Up to this time no notice had been given to Mace of any charges against him, though they were filed on July 31st and were received by him August 4th. He made no further effort to communicate with the General President at this time. He did not file any formal appeal, and made no further complaint to the General President.

The proceedings of the trial went on in orderly course, he was convicted by the trial board selected, and was fined, and thereafter he wrote again to the General President under date of August 24th, but not in any wise attempting to comply with the laws with reference to appeal, to which his attention had been called directly by the General President.

Had the appeal been filed prior to the trial, the General President might have disposed of the matter, or ordered delay until after the trial was had. At any rate, the plaintiff in the case did no act required of him under the Constitution of the Brotherhood, looking to an appeal. The Constitution provides, Sec. 56-G:

"All parties to an appeal to the General President are required to go before a notary public and make affidavit to the truth of their written or printed statements."

The plaintiff claims that some time after his suspension from the work, he did file two affidavits with the General President, but there is no claim that any copy or notice of any kind was given to the Local Union or the District Council. There was no evidence by the Brotherhood officers that such affidavits were received!

After the trial the plaintiff wrote to Mr. Reinke and sent in his book, and asked that the fine be dismissed as he was unable to pay it, and that a clearance card be sent to him so that he might procure membership in his home lodge. While he denied the letter, the circumstances are such as to make it clear that he did write it.

Not only was the plaintiff advised by the General President August 3rd that he must make his appeal, but all of his actions indicate that he knew that an appeal was necessary because almost immediately after he was suspended he wired the General President, then wrote him a letter, then claims to have sent him affidavits, and after the fine was imposed upon him and he had difficulty in paying it he wrote and asked for its remission.

It must be kept in mind that the right to file an appeal is for any grievance or injustice done by a member or any subordinate of the Brotherhood, so that plaintiff might have appealed from the action of Reinke acting as Business Agent, or from the proceedings at the trial.

It is interesting to note that the proceedings of the trial, which were offered in evidence, show that when Mace deposited his clearance card he was asked if he had a job to go to, and he said no, he was just looking around.

The alleged interference with the Business Agent was therefore in looking for a job before he had cleared in, which was forbidden by the Constitution of the Brotherhood, and his misrepresentation to him that he had not looked for work before clearing.

Under all these circumstances, what is the law pertaining to the case?

The Constitution of the Brotherhood provides as heretofore stated:

"A member must exhaust his resources allowed by the Constitution and Laws of the United Brotherhood before taking his case to the civil courts."

It is idle to discuss the question of the unconstitutionality of any provision seeking to deprive the parties of a right to take their cases into Court, but provisions have been held proper which require a member of a voluntary association to comply with his contract with the Union, implied from his membership, and seek his remedy within the association. Having done that and having been denied his rights, the courts are open to him.

In *B. & O. R. R. Co.* v. *Standard,* 56 O. S., 224, there was an action to recover benefits due to the claimants by reason of the death of their son, from the railroad company. One of the rules of the relief department of the railroad company provided that all claims of beneficiaries should first be submitted to the determination of the superintendent, whose decision should be final. It was held:

"that after the rejection of a valid claim by the advisory committee, the beneficiary could maintain an action in the court for the recovery of the money due thereon, and that the rule referred to is not a bar to the action."

On p. 231 the court say:

"If the superintendent had rejected the claim and so notified the parents, and they had failed to take an appeal to the advisory committee, it may well be doubted whether they could have sustained an action in court upon the claim, because in such beneficial associations it is held that the claimants must pursue to the full extent the remedy provided by the laws and regulations before resorting to actions at law. *This is for the benefit of both parties and is reasonable."* (Italics ours.)

A clearer statement of the rule and its reason could not well be stated. In such voluntary beneficial organizations, usually built upon fraternity and good-will, it is in the interest of the members that they should endeavor to settle their difficulties within their own organization, and where the constitution so provides, it will be and should be enforced. Then if injustice still prevails, the courts are open.

It would serve no good purpose to multiply authorities on this subject, except to call attention to the case of *Myers, et al v. Jenkins, Admr.,* 63 O. S., 101, in which there was a claim for sick benefits, and the court say:

"6. Where, in a proceeding in a lodge in substantial accordance with its laws it is determined that such member has no right to sick benefits, and the member appeals to the next higher tribunal in the order, and the lodge furnishes him a proper transcript of the proceedings and he fails to secure a hearing of his appeal by reason of his own negligence, or by reason of the negligence of such higher tribunal or some officer thereof, such failure to secure a hearing on his appeal will not entitle him to sue the lodge for such benefits in the civil courts."

The last case is interesting in that it requires the member taking the appeal to proceed according to the laws of the lodge. Where the constitution and laws direct a particular procedure, that procedure must be complied with.

Under the statutes of Ohio with reference to appeals, it has been uniformly held that the provisions of the statutes must be complied with in order to perfect an appeal, and that failure to perform the acts required will prevent the appeal becoming effective. See: *Layer, Gdn.* v. *Schaber,* 57 O. S., 234; *Bank* v. *Boucher,* 15 C. C., 114, 116; *Mathers* v. *Bull,* 18 C. C., 196.

In *Clark* v. *Morgan, et al,* 171 N. E., 276, there was an action for injunction and damages against the members and officers of the United Brotherhood of Carpenters and there was involved a claim there similar to the one involved in the instant case. In that case, considering the identical provisions of the constitution as to grievances and appeals, the court say, syllabus I:

"Member of labor Union seeking to protect his rights was required to first exhaust remedies given by the organization, before seeking relief in courts."

It was claimed there that the plaintiff was prevented from getting work by reason of the actions of the defendant. In dismissing the appeal the court, after discussing the facts and referring to the Constitution and By-Laws, uses the following very significant language, p. 280:

"But even if the District Council could not act, or the offense was not one for which the plaintiff could be barred from working in the Boston District as a member of the Union seeking to protect his rights as such, he should first

exhaust the remedies given him by the organization before seeking relief in the courts. Section 55 of the Brotherhood Constitution provides for this, and by Section 56, 'A member who has a grievance or who has had an injustice done him in any way, may appeal to the General President for redress, subject to a further appeal to the General Eecutive Board,' and a final appeal to the general convention. The plaintiff made no appeal from the decision of the District Council, and did not make use of the remedies given him by the organization. If, as he contends, he could not be barred from working in the Boston District or the Boston Council could not try him for the offense charged, he had a grievance, an injustice was done him and he should have proceeded under the rules of the organization and made use of the remedies thereby provided before seeking relief in the courts." (Cases cited).

In *Hickey* v. *Baine*, 195 Mass., 446, which was an action in mandamus for the purpose of securing possession of an office in the Union, the court say, p. 452:

"The rights of all the members of this voluntary association must be settled according to the provisions of the Constitution which they have adopted. *Reynolds* v. *Royal Arcanum*, 192 Mass., 150. Accordingly before these petitioners can invoke the aid of court to secure them in the offices to which they severally claim to have been elected, it must be shown that they have exhausted the remedies available to them within the association, and according to its rules.

"* * * if the action of the board was wrong, whether because they had no jurisdiction of the question or because they took an erroneous view of either the law or the facts, there was a further remedy open to the petitioners under the Constitution by appeal under Section 106 to a Convention to be held under Section 108. It is impossible to read this Constitution without seeing plainly that it was intended and purported to supply a full system of government by which the rights of all its members and rights and duties of all its officers among themselves should be determined and regulated under the management and control of the General Executive Board, which according to Section 8 is to decide all questions of usage wherein the Constitution is silent, and with a final and complete control in Convention to be held subject to the desire of the majority of the Local Union * * *. In our opinion, according to the decisions above cited, it was the duty of the petitioners to exhaust their remedies by appeal to such a Convention before coming into the courts."

*Snay* v. *Lovely, et al,* 176 N. E., 791 was a case involving the right to work by the plaintiff, which she was denied. The court held, syllabus 3:

"Members of Labor Union must exhaust remedies within organization before seeking relief in courts for any wrong, unless resort to remedies would be illusory or vain.

"4. Failure of Labor Union member to avail herself of remedy within organization prevented interposition of Court of Equity."

The court say, on p. 793:

"The plaintiff by becoming a member of the Union and agreeing to support it, entered into an obligation in the nature of a contract to become bound by its Constitution and governing rules, so far as not inconsistent with controlling principles of law. As an incident of membership she consented to be suspended or expelled in accordance with the Constitution and rules of the Union, by its appropriate officers acting in good faith, and in conformity to natural justice. Courts do not sit in review of decisions thus made by such officers, even though it may appear that there has been an honest error of judgment, an innocent mistake in drawing inferences or making observations, or failure to secure all information available to a more acute and searching investigation." (Cases cited.)

\* \* \* \* \* \* \* \*

"Another obligation impliedly arising from her membership in the Union was that plaintiff must exhaust remedies open to her within the Union before seeking relief in the courts for any wrong done her by the organization, unless it appears that resort to those remedies would be illusory or vain. (Cases cited.) The Constitution of the Union plainly provides that the plaintiff might have appealed from the adverse opinion of the General Executive Board to the Convention. That Convention was the body next above the General Executive Board, and had power to reverse and annul its decision. Her failure to avail herself of this remedy for the redress of grievance, afforded by the fundamental law of the Union, prevents her asking the interposition of the Court of Equity. There is in the record no foundation for the contention that such an appeal would have been fruitless or that it would not have been treated fairly by the convention. The fact that the convention did not assemble until a year or more after the suspension of the plaintiff, and within a city outside of the Commonwealth may be important in connection with others having

an over-reaching or crafty aspect in determining whether a particular contract is so harsh and unreasonable as to be offensive to sound legal principles. (Cases cited.) But standing alone it is not enough in the circumstances here disclosed to be a basis for relief. Commonly, contracts voluntarily executed with knowledge of their contents, by rational beings acting on their own judgments ought to be enforced. (Cases cited.) The single circumstance that the plaintiff by reason of her suspension from the membership was unable to secure work in Union or closed shops, while no doubt resulting in damage to her, does not create a cause of action in connection with other facts here disclosed."

The plaintiff in the instant case strongly urges and relies upon the decision of the Circuit Court of Appeals, Sixth Circuit, in *Local Union No. 65, etc.,* v. *Nalty,* 7 Fed. Rep., 2nd series, p. 100. In that case the plaintiff, a Union man, sought employment in the Cleveland District, and was refused a transfer of his membership. Not having a card authorizing him to work, he was unable to procure employment, and instituted his suit for damages. The court held under the circumstances in that case, that he was entitled to recover, and that he might abandon his claim to membership and resort to an action for damages for the wrong done. In the decision of the case the court points out that the action of the Union in refusing a transfer to the plaintiff was contrary to its Constitution, and points out that "in such case the member who has been wrongfully denied his rights is not bound by the action of the Union".

That criticism cannot be made of any act taken by those involved in the case at bar. There was a provision of the Constitution as to the duty of the plaintiff in clearing into Cincinnati, which it was claimed and which the evidence strongly tends to show he violated, which resulted in the charge being made against him.

Further, in the opinion of the court it is stated:

"Plaintiff exhausted every reasonable means at his command to procure within the order the rights to which he was entitled before resorting to this action. Defendant withheld them."

Again the cases are distinguishable for here the plaintiff

did not comply with the law as to appeal, although he was advised by the General President as to making his appeal, and when he was fined he failed to comply with the law as to the payment of the fine, which was a pre-requisite to his right of appeal from that action, and subsequently at his own request, the fine was remitted and a new card issued to him.

Again, the court in that decision say:

"As there is no provision in the Constitution or By-Laws that a member of the order must resort to its tribunals for redress, nor that having done so both are bound by the decision, we need not consider whether the presence of such provision would lead to different results."

As heretofore pointed out, the Constitution involved in the instant case clearly and explicitly provides that the remedies within the Union must be exhausted, before there is an appeal to the civil courts.

It seems clear, therefore, that the case of *Local Union No. 65, etc.* v. *Nalty* is not an authority in this case, but would be followed in a case in which there was some semblance of similarity of facts—as, if there had been a violation of the constitutional rights within the Union of the plaintiff and he had exhausted his remedies within the Union, and if the Constitution did not provide that he must exhaust such rights before proceeding in civil courts, then we would have a case similar to that case.

The court has made exhaustive study of the facts and the law in this case. As stated on the decision ordering the verdict for the defendants, no right is of more importance to the individual than the right to contract for his employment, and to work for his living and for the benefit of his family. When one joins a voluntary organization such as the United Brotherhood, he agrees to be governed by its Constitution and rules as in the nature of a contract. He has the freedom of contract, and there is nothing immoral or invalid in engaging in a contract to submit in the first place, disputes to the consideration of certain individuals as arbitrators, or as in this case to the superior officers

and finally to the general convention. The plaintiff engaged in this contract with the Union and his fellow members. He is bound by the contract as he would be bound by any other contract. Reinke claimed that he had violated the rule of the Union as to "clearing in". On the very day that plaintiff was suspended, a charge of violation of the Constitution was preferred against him. There was no delay in the proceeding, but it went forward with all despatch, resulting in a verdict signed by the entire trial board finding that Mace had violated the section referred to.

As above stated, he had two opportunities of appeal, one from the action of Reinke in causing him to be taken off the work, the other from the action of the trial board. He failed to appeal in either case. He was advised of his right, and duty to appeal. No advantage was taken of him, he was not misled, but was instructed by the General President what to do, but he merely dropped the matter at that point.

With all the care that the court has been able to give to the case, and with the fullest desire to protect men in their contractual rights, this court is unable to reach any other conclusion than that stated at the trial—namely, that this court had no jurisdiction in this case, for the reason that the plaintiff failed to pursue his remedies under the Constitution of the United Brotherhood.

The motion for new trial is therefore overruled.