### MOMAND v. UNIVERSAL FILM EXCHANGE, Inc., et al.

No. 7024.

District Court, D. Massachusetts.

March 20, 1942.

George S. Ryan, of Boston, Mass., for plaintiff.

Edward F. McClennen and Jacob J. Kaplan, both of Boston, Mass., for defendant.

WYZANSKI, District Judge.

At an earlier stage of this case Judge McLellan ordered that the issue of the statute of limitations should be tried separately and before a trial on the merits. Momand v. Paramount Pictures Distributing Co., D.C., 36 F.Supp. 568, 571. Pursuant to that order, the parties have filed an agreed statement of facts. My findings and conclusions are directed solely to the issue of the statute of limitations and in no way touch upon the merits.

Findings of Fact.

1. Introductory. In these findings of fact I consider in turn: the date this case began (fdg. 2); a summary description of the causes of action (fdg. 3); the status of the plaintiff (fdg. 4); the names of the defendants (fdg. 5); a detailed description of each of the ten counts in what is called "the declaration" in the case at bar (fdgs. 6–17); a detailed description of what is called "the complaint" filed April 17, 1931, in Law No. 4520 in the United States District Court for the Western District of Oklahoma, (fdgs. 18–30); a partial description of what is called "the petition" filed June 15, 1932, in Law No. 4520 (fdg. 31); a partial description of what is called "the amended petition" filed June 14, 1933, in Law No. 4520 (fdg. 32); a partial description of, and an explanation of the course of proceedings respecting, what is called "the amended and supplemental petition" filed August 27, 1934, in Law No. 4520 (fdgs. 33, 34); and a summary description of miscellaneous criminal and civil proceedings instituted by the United States under the anti-trust laws (fdgs. 35–50).

2. Date suit began. June 7, 1937 the plaintiff entered this case and the writ issued.

3. Summary description of the case. The declaration, filed June 22, 1937, is in ten counts. They involve separate actions for treble damages under Section 4 of the Clayton Act, Act of October 15, 1914, c. 323, 38 Stat. 731, 15 U.S.C.A. § 15. In general, the counts allege contracts, combinations and conspiracies in restraint of the motion picture trade and combinations and conspiracies to monopolize that trade, all in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. §§ 1 and 2, and all continuing until the time of this suit. (Declaration, par. 12).

4. Status of the plaintiff. The plaintiff since prior to 1931 continuously has been and now is a citizen and resident of Oklahoma. He sues as assignee of ten separate corporations, the first eight of which leased motion picture theatres, the ninth being a lessor company, and the tenth

being a management company. The declaration recites that on April 13, 1931, and December 31, 1932, the claims here presented were assigned to him by the Home Amusement Company (Count 1, par. 43); Shawnee Theatre Company (Count 2, par. 6); Wewoka Theatre Company, Inc. (Count 3, par. 9); Clinton Theatre Company, Inc. (Count 4, par. 11); Holdenville Theatre Company, Inc. (Count 5, par. 8); Hartshorne Theatre Company, Inc. (Count 6, par. 8); Pawhuska Theatre Company, Inc. (Count 7, par. 8); Alva Theatre Company, Inc. (Count 8, par. 7); Momand Realty Corporation (Count 9, par. 8); and Momand Theatres, Inc. (Count 10, par. 7). The details of the assignments are not given.

5. Names of the defendants. The eight defendants are: Universal Film Exchange, Inc.; Loew's, Inc.; Metro-Goldwyn-Mayer Distributing Corporation; Twentieth Century-Fox Film Corporation; Vitagraph, Inc.; R.K.O. Distributing Corporation; United Artists Corporation; and Columbia Pictures Corporation.

6. Analysis of the declaration. The ten counts of the declaration each incorporate the first 32 paragraphs of Count 1. Then each count proceeds to further details with respect to action alleged to have been taken toward, and damage suffered by, a different one of the ten assignor corporations, referred to in finding 4 above.

7. The first 32 paragraphs of Count 1 open with a description of the motion picture industry (par. 3-8). The declaration describes the free competition alleged to have existed in 1921 (par. 9) and then makes general allegations which are here summarized. In December, 1921, and April, 1922, the defendants Universal, Loew's, Metro, Fox and Vitagraph, and others not defendants, entered into a conspiracy (par. 10a) which R.K.O., United Artists and Columbia, the other defendants, later joined (par. 11). The conspiracy included limitation of production; regulation of prices for film licenses and for admission to theatres; allocation of territories and zones; boycott of the films of independent producers; special privileges to producer-controlled theatres; and pooling of resources (par. 10). In pursuance of the conspiracy (par. 12), the defendants, except Columbia, divided territory, acquired the stock of competing corporations, closed their businesses and secured from their former employees covenants not to compete (par. 13). All the defendants combined to eliminate Associated First National Exhibitors and First National Productions Corporation (par. 14). They refused to contract with independent producers (par. 15). The effect was to put the independent producers and distributors out of business (par. 16). The conspirators gave to producer-controlled theatres special licenses and privileges, including franchises, annual deals and master contracts (par. 17). In 1926 the defendants collectively adopted a practice known as "protection" which was directed at competition from independent exhibitors; and about May 1, 1930, they formed a scheme to induce independent exhibitors to assent to the practices of protection (par. 18). The protection agreements, together with franchises, contracts and reservations of product, created a monopoly (par. 19). The defendants, except United Artists, jointly adopted and enforced block booking, blind buying and full line selling, and threatened to acquire competing theatres (par. 20). The defendants, in order to exact excessive prices, checked exhibitors' receipts and followed a system of discriminatory percentage contracts (par. 21). About June 14, 1922, they collectively agreed on uniform contracts with mandatory arbitration clauses (par. 22). They adopted uniform rules for the operation of oppressive credit systems (par. 23). They conspired to enhance minimum admission prices (par. 24); engaged in oppressive practices including promises which they were not bound to observe or which they broke (par. 25) and carried on practices of price-cutting, excessive bids for leases, interferences with contracts, and acquisition of leases (par. 26). When sound films became a commercial success, the conspirators agreed that independent producers would not be licensed but that those producers who were in the conspiracy should engage in cross-licensing under patents (par. 27). They resorted to various practices impeding independent exhibitors from showing sound pictures (par. 27). Through these practices the defendants and Paramount had attained by January 1, 1927, a monopoly (par. 28). The conspiracy and monopoly eliminated competition (par. 29 through par. 32).

8. After these introductory allegations, Count 1 of the declaration then presents claims assigned by Home Amusement Company. That company operated the Savoy

Theatre in Shawnee until it closed in September, 1931. The count alleges that up to that time the company was continuously suffering damages as a result of various acts of the defendants in pursuance of the general conspiracy. The count refers particularly to the acts of the defendants in 1926 in connection with their uniform arbitration contract, but also alleges that continuously the defendants, except United Artists, engaged in full line selling and that continuously all the defendants followed the practices of percentage contracts, checking exhibitors' receipts, prescribing minimum admission prices and block booking. The count also alleges that in pursuance of the conspiracy, Griffith Amusement Company, an affiliate of Universal, beginning in 1926 and 1927 and continuously thereafter, operated two competitors, the Bison and Ritz Theatres, so that they received benefits from, and the Home Amusement Company suffered damage from, the conspiracy.

9. Count 2 is based upon causes of action assigned to the plaintiff by Shawnee Theatre Company. That company operated the Odeon Theatre in Shawnee until July, 1931. Count 2 incorporates the broad allegations of Count 1 and then alleges that Griffith, an affiliate of Universal, beginning in 1926 and 1927 and continuously thereafter, operated in Shawnee two competing theatres, the Ritz and the Bison, which were used in pursuance of the conspiracy to the injury of Shawnee Theatre Company at least until the close of the 1928–1929 season. In 1929 Griffith leased the Criterion Theatre and used it in pursuance of the conspiracy to the injury of the Shawnee Theatre Company.

10. Count 3 is based upon causes of action assigned to the plaintiff by Wewoka Theatre Company, Inc. That company operated the Rex and Key Theatres in Wewoka until December, 1932. This count, after referring to the general conspiracy and particularly to the protection practices of the conspirators, places special reliance on the acts of Paramount (which is not a defendant) and Universal (which is a defendant) in and subsequent to September, 1930. These acts are alleged to include the opening of a competing theatre for the purpose of injuring the Wewoka Theatre Company, the preference of that theatre and the use of that theatre to book pictures which it could not exhibit.

11. Count 4 is based upon the causes of action assigned to the plaintiff by Clinton Theatre Company, Inc. That company operated in Clinton until 1931 the Hamley (later called Rex) and Royal Theatres and until 1932 the Rialto Theatre. This count, after referring to the general conspiracy, places special reliance on damage alleged to have been sustained from February to May, 1929, as a result of the defendants' credit committee and credit policy, particularly when the Clinton Theatre Company, Inc., began operating the Rex Theatre; on damage sustained at unspecified times as a result of the defendants' full line selling policy and protection schedules; on damage sustained from the acts in 1930, 1931 and subsequently of the defendants and of Paramount in aiding the operation of competing exhibitors designed to injure the Clinton Theatre Company, Inc.

12. Count 5 is based upon the causes of action assigned to the plaintiff by Holdenville Theatre Company, Inc. That company operated in Holdenville the Dixie, Grand and Liberty Theatres. The count appears to claim damages only on account of the Dixie and Grand Theatres which operated under the plaintiff's control until different dates in 1931. The count, after referring to the general conspiracy and repeating the allegations with respect to full line selling and protection schedules (Count 5, par. 5), places special reliance on damages alleged to have been suffered on and after December 14, 1926, due to defendants' credit policies and credit committees (Count 5, par. 4) and on damages alleged to have been suffered in 1931 by defendants' causing the termination of the lease of the Grand and using that theatre in unlawful competition with the Dixie Theatre (Count 5, par. 6).

13. Count 6 is based upon causes of action assigned to the plaintiff by Hartshorne Theatre Company, Inc. That company operated the Liberty and Criterion Theatres in Hartshorne. Apparently this count seeks damages only on account of the Liberty Theatre which closed in 1932, the Criterion having been let go in 1930. This count, after again referring to the general conspiracy and repeating the allegations with respect to full line selling and protection schedules, places special reliance on the defendants' alleged discriminatory and oppressive practices with

respect to sound films beginning about January 1, 1929 (Count 6, par. 4); on the alleged unlawful action of the defendant R. K. O. in June, 1930, in the booking of particular pictures (Count 6, par. 5); and on the alleged unlawful use of a competing theatre (Count 6, par. 6).

14. Count 7 is based upon causes of action assigned to the plaintiff by Pawhuska Theatre Company, Inc. That company operated the State Theatre in Pawhuska until January, 1935. This count, after referring to the general conspiracy, places special reliance upon the alleged unfair practices of the defendants beginning in 1929 in connection with the distribution of sound films, the defendants' alleged discrimination beginning in 1928, and their interference with admission prices especially in 1931 and 1932.

15. Count 8 is based upon causes of action assigned to the plaintiff by Alva Theatre Company, Inc. That company operated the Liberty, Rialto and Majestic Theatres in Alva. Apparently no claim is presented with respect to the Majestic Theatre. The Liberty Theatre closed in September, 1931; the Rialto Theatre is not alleged to have closed. This count, after referring to the general conspiracy, places special reliance on the action of the defendants in 1927 and 1928 in connection with full line selling, block booking and threats of discriminatory competition. It also places reliance upon subsequent action by the defendants in connection with alleged discriminatory preference of a so-called "airdome" theatre and upon alleged unfair practices in connection with the distribution of sound films.

16. Count 9 of the declaration is based upon a claim assigned by Momand Realty Corporation. The count alleges that the company acquired, subject to a mortgage, and then leased to Clinton Theatre Company, Inc. the Rialto Theatre in Clinton; and acquired, subject to mortgages, and then leased to Wewoka Theatre Company, Inc. the Rex and Key Theatres in Wewoka. The count further alleges that the conspiracy caused the two theatre companies to close their three theatres and terminate their leases, and that, other tenants being unavailable, Momand Realty Company lost the equity it had in the three parcels, one at an unspecified date, the other two on November 17, 1932. The count alleges that the loss of the equities constitutes damages to Momand Realty Corporation and alleges that the company assigned the causes of action to the plaintiff on April 13, 1931, and December 31, 1933.

17. Count 10 of the declaration is based upon a claim assigned by Momand Theatres, Inc. The count alleges that the company had management contracts under which it managed for a percentage fee the theatres referred to in the first eight counts of the declaration (Count 10, par. 2); that due to the conspiracy the yield from those contracts was decreased and finally destroyed, thereby damaging the company; and that the causes of action for the damages were assigned to the plaintiff on April 13, 1931, and December 31, 1933.

18. Analysis of the complaint in No. 4520. April 17, 1931, the plaintiff, his assignors and others filed in the United States District Court for the Western District of Oklahoma, an action entitled' A. B. Momand v. Paramount Publix Corporation et al., Law No. 4520 (hereinafter called No. 4520). All the defendants in the suit at bar were defendants in that suit.

19. The gist of that complaint was that the defendants had engaged in contracts, combinations and conspiracies in restraint of the motion picture trade and had combined and conspired to monopolize that trade. Cf. Sections 1 and 2 of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. §§ 1 and 2. Included in the complaint were references to virtually all the practices which the defendants in this case say are the gravamen of the present complaint. Def. Br. p. 15 et seq. The original Oklahoma complaint referred to a conspiracy to limit the production, distribution and exhibition of motion pictures (Ex. A, pp. 6, 10, 11); a conspiracy to increase prices to exhibitors for films and to the public for admission (Ex. A, pp. 10, 19); allocation of territories (Ex. A, pp. 6, 8); block booking (Ex. A, pp. 11, 16); blind buying (Ex. A, p. 19); full line selling (Ex. A, pp. 19, 25); threats to acquire competing theatres (Ex. A, pp. 6, 27, 41); percentage contracts (Ex. A, pp. 20, 21, 25, 26); checking exhibitors' receipts (Ex. A, pp. 26, 27); excessive prices (Ex. A, pp. 17, 26, 27); uniform contracts, including arbitration provisions (Ex. A, pp. 7, 11, 12, 13); credit enforcement (Ex. A, pp. 13, 14, 39); requirement

of minimum admission prices (Ex. A, pp. 27, 28); discrimination in prices (Ex. A, pp. 15, 20, 29); preferential contracts for the use of sound equipment (Ex. A, p. 28); retardation of installation of sound equipment (Ex. A, p. 28); and the creation of a monopoly in motion pictures (Ex. A, p. 10).

20. In addition to these broad allegations, the complaint in No. 4520 sets forth in separate counts claims for specific damage sustained by separate companies.

21. The second cause of action of the complaint (Ex. A, pp. 30, 31) foreshadowed Count 1 of the declaration at bar. It involved the claim of Home Amusement Company on account of its Savoy Theatre in Shawnee. After incorporating the broad allegations of conspiracy, the cause of action specifically referred to the competitive theatres operated by Griffith Amusement Company. It lays emphasis on control of admission prices and of pictures of quality. It does not refer to a specific incident in 1926 regarding the uniform contract.

22. The third cause of action of the complaint (Ex. A, pp. 31, 32) foreshadowed Count 2 of the declaration at bar. It involved the claim of Shawnee Theatre Company, Inc., on account of its Odeon Theatre in Shawnee. After incorporating the broad allegations of conspiracy, the cause of action specifically referred to the competitive theatres operated by Griffith Amusement Company. It lays emphasis on control of admission prices and of pictures of quality.

23. The seventh cause of action of the complaint (Ex. A, pp. 35, 36) foreshadowed Count 3 of the declaration at bar. It involved the claim of Wewoka Theatre Company, Inc., on account of its Rex and Key Theatres in Wewoka. After incorporating the broad allegations of conspiracy, the cause of action specifically referred to unfair competition from producers' theatres to which discriminatory preference was given.

24. The eleventh cause of action of the complaint (Ex. A, pp. 39, 40) foreshadowed Count 4 of the declaration at bar. It involved the claim of Clinton Theatre Company, Inc., on account of all "its theatres" (line 21 of said eleventh cause). The statement of the cause mentions the Hamley (later called Rex) and Rialto Theatres, and an earlier part of the complaint men-

tions the Royal Theatre (Ex. A, p. 5). After incorporating the broad allegations of conspiracy, the cause of action specifically referred to the defendants' insistence that Clinton Theatre Company, Inc., when it took over theatres, should take over their liabilities; to the defendants' refusal to deliver pictures; and to the defendants' delivery of undesirable pictures. The complaint does not refer to the defendants' unfair use of competing theatres controlled by producers or of steps taken by the defendants to aid such theatres.

25. The eighth cause of action of the complaint (Ex. A, pp. 36, 37) foreshadowed Count 5 of the declaration at bar. It involved Holdenville Theatre Company, Inc., on account of its Dixie, Grand and Liberty Theatres in Holdenville. After incorporating the broad allegations of conspiracy, the cause of action specifically referred to the attempts of the defendants to acquire a competitive theatre in Holdenville, defendants' refusal to sell pictures, and defendants' price policy. The complaint does not refer specifically to any events in 1926 regarding the defendants' credit policies and credit committees.

26. The ninth cause of action of the complaint (Ex. A, pp. 37, 38) foreshadowed Count 6 of the declaration at bar. It involved the claim of Hartshorne Theatre Company, Inc., on account of its Liberty Theatre in Hartshorne. The cause of action incorporates the broad allegations of conspiracy. The cause of action does not specifically refer to the defendants' practices respecting sound films or any incident in 1930 regarding the booking of pictures.

27. The sixth cause of action of the complaint (Ex. A, pp. 34, 35) foreshadowed Count 7 of the declaration at bar. It involved the claim of Pawhuska Theatre Company, Inc., on account of its State Theatre in Pawhuska. After incorporating the broad allegations of conspiracy, it specifically refers to defendants' discriminatory practices, refusal to lease films at reasonable prices and like practices.

28. The tenth cause of action of the complaint (Ex. A, pp. 38, 39) foreshadowed Count 8 of the declaration at bar. It involved the claim of Alva Theatre Company, Inc., on account of its Liberty, Rialto and Majestic Theatres in Alva. After incorporating the broad allegations of conspiracy it specifically refers to the defend-

ants' refusal to sell pictures suitable for new equipment and to the defendants' discriminatory preference of an "airdome" theatre.

29. The thirteenth cause of action of the complaint (Ex. A, p. 41) involves the claim of Momand Realty Corporation which is involved in Count 9 of the declaration at bar. This cause of action, after incorporating the broad allegations of the conspiracy, refers specifically to transactions in the town of Maud. No specific reference is made to transactions in Clinton or Wewoka.

30. The first cause of action of the complaint (Ex. A, p. 30) involves the claim of Momand Theatres, Inc., which is involved in Count 10 of the declaration at bar. This cause of action incorporates the broad allegations of the conspiracy, and alleges that due to the conspiracy Momand Theatres, Inc., has been "unable to continue operations of its business, building and constructing and equipping theatres." Earlier the complaint states that the company's business includes "operating, managing and financing theatre corporations." Ex. A, p. 2.

31. The "petition" filed in No. 4520. June 15, 1932, the plaintiff filed in No. 4520 what he styled "a petition" (Ex. B). This restated and in some respects amplified the original complaint. In particular, the eleventh cause of action was restated to make clear the alleged use by defendants of competitors to injure Clinton Theatre Company, Inc. (Ex. B, pp. 28, 29. Cf. fdg. 24, supra.) and the first cause of action was restated to make somewhat clearer a reference to the alleged damage to the management contracts of Momand Theatres, Inc. Ex. B, p. 3. Cf. fdg. 30, supra. Nothing of importance was added to the claim of Momand Realty Corporation. Ex. B, pp. 30, 31. Cf. fdg. 29, supra.

32. The "amended petition" filed in No. 4520. June 14, 1933, the plaintiff filed in No. 4520 what he styled an "amended petition" (Ex. C). This restated and in some respects amplified the petition. Nothing of importance was added to the claim of Momand Realty Corporation. Ex. C, p. 51. Cf. fdg. 29, supra.

33. The "amended and supplemental petition" filed in No. 4520. August 27, 1934, the plaintiff filed in No. 4520 what he styled an "amended and supplemental petition". Ex. D, p. 2 et seq. This document did not name Loew's, Inc., as a defendant, although the prior pleadings had done so. This document sets forth almost in haec verba the allegations now pleaded in the declaration at bar. Paragraphs 7 through 15 of the fourteenth cause of action pleaded in the amended and supplemental petition include substantially the same causes of action as count 9 of the declaration at bar. Ex. D, pp. 76, 77. Cf. fdg. 30, supra.

34. October 17, 1934, the defendants in No. 4520 filed a motion to strike and to make the last pleading more definite and certain. The United States District Court in the Western District of Oklahoma sustained that motion in part and issued an order accordingly. (See Ex. D and recitals in the twelfth finding of fact in Momand v. Twentieth Century-Fox Film Corp. et al., D.C., W.D.Okl., Nos. 6516, 6517, Oct. 4, 1941). The plaintiff declined to comply with the order, and the court dismissed the action. The plaintiff seasonably appealed to the United States Circuit Court of Appeals for the Tenth Judicial Circuit. That court reversed the order of the District Court and in its opinion, Momand v. Paramount Publix Corporation, 88 F.2d 578, 579, stated that:

"The order is reversed with instructions to vacate the order and enter an order dismissing the amended petition without prejudice."

April 19, 1937, that Circuit Court of Appeals issued its mandate and the same day that District Court dismissed the amended petition without prejudice. (See fdgs. 13 and 14 in Nos. 6516–6517 in the United States District Court for the Western District of Oklahoma.)

35. Miscellaneous criminal and civil proceedings instituted by the United States under the anti-trust laws. At various times in the last fifteen years the United States has instituted against these defendants or some of them proceedings in equity or criminal prosecutions upon which the plaintiff relies to suspend the running of the statute of limitations. Section 5 of the Clayton Act, Act of October 15, 1914, c. 323, 38 Stat. 731, 15 U.S.C.A. § 16.

36. United States v. First National Pictures, Inc., et al., 34 F.2d 815, was an equity suit filed June 20, 1928, in the United States District Court for the Southern District of New York, Eq. No. 45-99 (hereinafter referred to either as Eq. No. 45-99 or as the credit practices suit). In that litigation the United States sued all the present defend-

ants except Columbia Pictures Corporation and Loew's, Inc. The petition in that case, while reciting that the defendants were in a conspiracy and while describing numerous practices of the industry, alleged as unlawful means used in that conspiracy only the adoption of credit committee rules, the provisions of such rules, credit committee questionnaires and supplemental agreements. Ex. E, pp. 20–24. The case, after going to the Supreme Court of the United States, (see 282 U.S. 44, 51 S.Ct. 45, 75 L. Ed. 151), terminated July 21, 1931, in a final decree restraining the defendants from further use of those means (Ex. F).

37. United States v. Paramount Famous-Lasky Corp. et al., 34 F.2d 984, was an equity suit filed June 20, 1928, in the United States District Court for the Southern District of New York, Eq. No. 45-100, (hereinafter referred to either as Eq. 45-100 or as the uniform contract suit). In that litigation the United States sued all the present defendants except Columbia Pictures Corporation and Loew's, Inc. The petition in that case, while reciting that the defendants were in a conspiracy and while describing numerous practices of the industry, alleged as unlawful means used in that conspiracy only uniform contracts, contract provisions for arbitration and for enforcing awards, organization of film boards, agreements for arbitration and enforcing awards, provisions of rules for arbitration and enforcing awards, and supplemental agreements for enforcing awards. Ex. G, pp. 38–50. The case, after going to the Supreme Court of the United States (see 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145) terminated July 21, 1931, in a final decree restraining the defendants from further use of those means (Ex. H, as explained in par. 9 of the Agreed Statement of Facts).

38. United States v. Fox Theatres Corp. et al. was an equity suit filed November 27, 1929, in the United States District Court for the Southern District of New York, Eq. No. 51-122. It sought to restrain the defendant Fox interests from acquiring the stock of Loew's, Inc., of Metro Corporation and of Metro Distributing Corporation in violation of Section 7 of the Clayton Act. Ex. I, p. 13. See also Ex. J, K and L.

39. United States v. Warner Bros. Pictures, Inc., et al. was an equity suit filed November 27, 1929, in the United States District Court for the Southern District of New York, Eq. No. 51-121. It sought to have Warner Bros. divest itself of stock of

First National Company and of Maryland First National Co. alleged to have been acquired in violation of Section 7 of the Clayton Act. Ex. M, pp. 10, 11. See also Ex. N.

40. United States v. West Coast Theatres, Inc. (unnumbered) was a criminal information filed September 20, 1928, in the United States District Court for the Southern District of California. It relates to an alleged conspiracy with overt acts confined to Southern California. Ex. O, p. 27 et seq.

41. United States v. West Coast Theatres, Inc., No. 9663-H was an indictment filed April 19, 1929, in the same court for a conspiracy with alleged overt acts in the same area. Ex. Q and R, p. 19 et seq.

42. United States v. West Coast Theatres, Inc., et al., Eq. No. S-10-C, was an equity suit filed August 21, 1930, in the same court to restrain a conspiracy with alleged overt acts in the same area. Ex. S, pp. 63–69.

43. United States v. Fox West Coast Theatres Corp. et al., No. 14048-C, was an information charging criminal contempt of a decree in the suit just mentioned. The information was filed in the same court August 31, 1939, charging wrongful acts in the same area. Ex. S, pp. 19–35.

44. United States v. Fox West Coast Theatres et al., No. Y-38-H, was a suit in equity filed in the same court to restrain alleged overt acts in the same area. Ex. U, p. 5; Ex. V, par. 6 and 7; Ex. W.

45. United States v. Balaban & Katz Corp., Eq. No. 8854, was an equity suit filed December 15, 1928, in the United States District Court for the Northern District of Illinois, Eastern Division. It related principally to acts in the Chicago area. Ex. X, pp. 36–44.

46. United States v. United Theatres, Inc., Eq. No. 39, was an equity suit filed July 16, 1932, in the United States District Court for the Eastern District of Louisiana. It related principally to alleged acts in the New Orleans area. Ex. BB and CC.

47. United States v. Warner Bros. Pictures, Inc., et al. No. 18744, was an indictment filed January 11, 1935, in the United States District Court for the Eastern District of Missouri based principally upon alleged acts in Missouri. Ex. DD.

48. United States v. Warner Bros. Pictures, Inc., et al., Eq. No. 11516, 13 F.Supp. 614, was an equity proceeding filed in the

**1006**

same court August 6, 1935, based on alleged acts in Missouri.

49. United States v. Warner Bros. Pictures, et al., Eq. No. 82-206 was an equity proceeding filed February 25, 1936, in the United States District Court for the Southern District of New York based upon alleged acts in Missouri.

50. United States v. Interstate Circuit, Inc., et al., Eq. No: 3736-3792, 20 F.Supp. 868, was an equity proceeding filed December 15, 1936, in the United·States District Court for the Northern District of Texas based upon alleged acts in Texas and New Mexico.

### Conclusions of Law.

1. Introductory. At this stage the only issue before the court is whether any or all of the causes of action here presented are barred by the statute of limitations. Stated broadly, the issue turns on when the causes of action accrued; what statute of limitations governs; and to what extent, if any, the running of the statute of limitations was suspended by proceedings in equity or criminal prosecutions instituted by the United States under the anti-trust laws.

2. When causes of action under the anti-trust acts accrue. In a case where the statute of limitations is pleaded, the initial point of inquiry is when did the cause of action accrue. Statutes of limitations generally, and the Massachusetts and Oklahoma statutes in particular, begin to operate only "after the cause of action accrues". Mass.G.L. (Ter.Ed.) c. 260, sec. 2; Okl. Code of Civil Procedure, § 101, 12 Okl.St.Ann. § 95. In determining whether a cause of action has accrued, the law which governs is the law of the jurisdiction which gives the cause of action, not the law which supplies the applicable period of limitation. Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605. Therefore, in determining when this plaintiff's causes of action accrued, the law which governs is the law of the United States which gives the private right to sue for damages suffered from violations of the anti-trust laws. On this point Massachusetts or Oklahoma law is not controlling.

3. Under the law of the United States private causes of action for damage suffered from violations of the anti-trust law may accrue at different times, depending upon the type of violation. If the violation is a single act on a single day, the tort would ordinarily be complete as soon as there has been an invasion of the plaintiff's legally protected interest. At once the cause of action accrues and the statute of limitations starts to run. Cf. American Law Institute, Restatement of Torts, vol. IV, § 899, comment c, pages 524–526. In the single violation type of case, the moment the plaintiff's interest is invaded he is entitled to sue for damages not only on account of the injuries he suffered at once but also on account of those he will suffer in the future from the defendant's wrong, including what he has suffered during, and will suffer after, the trial. Cf. New York, Lake Erie & Western Railroad Co. v. Estill, 147 U.S. 591, 615, 616, 13 S.Ct. 444, 37 L.Ed. 292.

4. But the situation is different where, as here, the plaintiff alleges that the defendants have continuously, until the date of the trial, violated the anti-trust laws and those continuous violations have at different times invaded the plaintiff's legally protected interest. Declaration, Count 1, par. 12. Each time the plaintiff's interest is invaded by an act of the defendants, he has a new cause of action. For that particular invasion he is at once entitled to recover as damages, not only for the injuries he suffers at once, but also for those he will suffer in the future from that particular invasion, including what he has suffered during and will suffer after the trial. Lawlor v. Loewe, 235 U.S. 522, 536, 35 S.Ct. 170, 59 L.Ed. 341. But he can not at once recover for anticipated invasions, even though they are of the same general character as those he has already sustained. (See the list of citations collected by counsel for defendants in error in their brief in Lawlor v. Loewe and reprinted in 59 L.Ed. at page 347.) As to those anticipated invasions he has not, to use the controlling language of Section 4 of the Clayton Act, been as yet "injured in his business or property" and "the damages" have not been as yet "by him sustained". 15 U.S.C.A. § 15. His position may be compared to that of an owner of property who is adjacent to a continuous nuisance or to water constantly overflowing from a dam. Each time the nuisance is repeated or the dam overflows the landowner has at once a cause of action for the present and future injury to his land from that particular wrong; but in many jurisdictions this gives him no immediate right to sue for damages which he may suffer from future repetitions of the nuisance or future overflow of the dam.

When those new invasions occur, new causes of action will accrue and a new period of limitation applicable to the damage from those invasions will begin. Inhabitants of New Salem v. Eagle Mill Co., 138 Mass. 8, 10; Cities Service Gas Co. v. Eggers, 186 Okl. 466, 98 P.2d 1114, 1118, 126 A.L.R. 1278. Cf. Am.Law Inst., Restatement of Torts, vol. IV, § 899, comment d, pp. 527, 528.

5. It is not difficult to apply the foregoing principles to this case. As I have said, the plaintiff here alleges first, that the conspiracy continued up to the date of the writ, and second, that the plaintiff's interests have been invaded at different times. The first allegation is not controlling. Even though "a conspiracy * * * is in effect renewed during each day of its continuance" (United States v. Borden Co., 308 U.S. 188, 202, 60 S.Ct. 182, 190, 84 L.Ed. 181), no private civil cause of action accrues from the mere conspiracy itself because standing alone a conspiracy does not invade any private rights. Nalle v. Oyster, 230 U.S. 165, 182, 183, 33 S.Ct. 1043, 57 L.Ed. 1439; Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 85 F.2d 742, 751. Thus, in private suits the existence of the conspiracy as such is not the critical question in computing the period of limitation. Northern Kentucky Telephone Co. v. Southern Bell Telephone & Telegraph Co., 6 Cir., 73 F.2d 333. See, also, the cases collated in Note 97 A.L.R. 137. The critical question is on what date or dates the defendants invaded the plaintiff's interest. Cf. American Law Institute, Restatement of Torts, vol. IV, § 899, pp. 523–529. In the case from the Sixth Circuit just cited it is said that the question is on what date the defendant last acted, which is perhaps another way of stating the same rule.

6. In the instant case the allegation is that the defendants invaded the interests of the plaintiff's assignors continuously over a long time. It is not necessary to deal now with the exact dates. It will suffice if I say that many of the practices with which the defendants are charged, such as unfair use of competing theatres, protection policy, credit practices, uniform contracts, full line selling and block booking, are alleged to have been repeated. So long as they were repeated and the defendants continued to invade the interests of a company which leased, owned or managed a theatre, new causes of action accrued to

that company. Most of these theatres closed in 1931 or 1932, but in one case the closing was not until January, 1935 (Declaration, Count 7, par. 7) and it is alleged that until the end the defendants acted against it. Count 7, par. 2, 3 and 5. Therefore, at least some of the assignors had some causes of action which did not accrue until 1935, although they, like the other assignors, had other causes which accrued much earlier, perhaps even day by day. (I doubt whether the dictum of Judge McLellan at an earlier stage of this case was meant to imply anything to the contrary. See Momand v. Paramount Pictures Distributing Co., D.C.Mass., 36 F.Supp. 568, 570, 571.)

7. However, the plaintiff is not in quite the same position as the assignor companies just mentioned. The plaintiff in each of the ten counts states that the company named in that count (which, depending on the count, is either a lessee, owner or manager of a theatre) on "April 13, 1931 and December 31, 1933 * * * assigned * * * to the plaintiff its entire claim and cause or causes of action against the said defendants for said damages and injury caused to it and its business." This alleges that each company purported to assign existing, but apparently not future, causes of action. Even if an assignment of a future cause of action under the anti-trust laws is possible, which is doubtful (Cf. Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y., 39 F.Supp. 117, 119; see Williston, Contracts, 2d Ed., Vol. V, § 1652, also Vol. II, § 413, note 5), no such assignment is here alleged. Moreover, the defendants might conceivably have a valid objection to responding to a claim based upon a future cause of action on the ground that the assignment being equitable in nature the assignors must be joined as parties with the assignee. Cf. American Law Institute, Restatement of Contracts, § 166(2); Williston, Contracts, 2d Ed., Vol. II, § 413.

8. In short, the plaintiff cannot recover here on causes of action that accrued to his assignors after the second assignment, December 31, 1933. It may be worth emphasizing that most of the causes of action in suit must have accrued prior thereto because, as I have pointed out, in a private anti-trust suit a new cause accrues each time the interest of the plaintiff (or his assignor) is invaded, and here it is alleged that there were repeated invasions from the

late 1920's until at least the closing of each particular theatre involved.

9. What statute of limitations governs. Although the time when a cause of action given by Section 4 of the Clayton Act accrues is governed by the statutes of the United States, those statutes do not prescribe a period of limitation for such an action, but instead provide that the local law shall determine the period of limitation. R.S. § 721, 28 U.S.C.A. § 725; Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241. The applicable local law is the law of the state where the action is brought, including, of course, the principles of conflict of laws so far as they are embodied in the law of that state. Momand v. Paramount Pictures Distributing Co., D.C.Mass., 36 F.Supp. 568, 570; Seaboard Terminals Corporation v. Standard Oil Co. of New Jersey, D.C. S.D.N.Y., 24 F.Supp. 1018, 1020, affirmed on the opinion below 2 Cir., 104 F.2d 659; Cf. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

10. The law of the state where this action was brought has two relevant statutory provisions. The first, Mass.G.L. (Ter.Ed.) c. 260, sec. 2, provides:

"The following actions shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues: * * *

"Second, Actions of tort."

The effect of this statute (except in so far as it is suspended by Section 5 of the Clayton Act, of which I shall say more later, conc. 29–33) is to bar all causes of action here presented which accrued prior to June 7, 1931, six years before this action was begun in this court.

11. But there is another statutory provision in Massachusetts upon which the defendants rely for a shorter period of limitation. Mass.G.L.(Ter.Ed.) c. 260, § 9 provides:

"No action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein."

Since the plaintiff has continuously resided in Oklahoma this statutory provision is relevant and I turn to the law of the state of Oklahoma to see whether any of the causes of action which are not barred by the Massachusetts six year statute just cited were barred in Oklahoma.

12. The Oklahoma statutory provisions which require consideration are in sections 101 and 106 of the Oklahoma Code of Civil Procedure. Oklahoma Code of Civil Procedure, Section 101, 12 Okl.St.Ann. § 95, provides these among other limitations for civil actions:

"Second. Within three years: An action upon a contract express or implied not in writing; *an action upon a liability created by statute other than a forfeiture or penalty.* [Italics added.]

"Third. Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; *an action for injury to the rights of another,* not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." (Italics added.)

Oklahoma Code of Civil Procedure, Section 106, 12 Okl.St.Ann. § 100 provides:

*"Limitation of new action after reversal or failure otherwise than on merits.—If* any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fails in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if he die, and the cause of action survive, his representatives may commence a new action within one year after the reversal or failure."

13. On the facts at bar these statutes present three different problems: (1) does the three year limitation in Clause Second of Section 101 apply; (2) does the two year limitation in Clause Third of Section 101 apply; and (3) is the three year or two year period enlarged by Section 106?

14. I regard it as too plain for extended discussion that the three year statute does apply. These causes of action are founded upon violations of the federal anti-trust laws. Each of them is, within the meaning of Clause Second of Section 101, "an action upon a liability created by statute other than a forfeiture or penalty." Momand v. Twentieth Century-Fox Film Corp., et al., D.C.W.D.Okl., Nos. 6516–6517, Oct. 4, 1941, Hansen Packing Co. v. Swift & Co., D.C.S.D.N.Y., 27 F.Supp. 364, 367, 368. Compare the construction placed upon R.S. § 1047, 28 U.S.C.A. § 791, in Chat-

tanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 398, 27 S.Ct. 65, 51 L.Ed. 241.

15. I regard it as almost equally plain that the two year statute does not apply. Clauses Second and Third of Section 101 were intended to be mutually exclusive, the former covering contractual and statutory liabilities; the latter, non-statutory tort liabilities. Since, as I have just said, this action falls within the former category, it is excluded from the latter. Moreover, the types of action grouped in the latter category are so plainly the familiar tort suits without statutory foundation and are so plainly ejusdem generis, that I conclude that, as used in Clause Third of Section 101, the dragnet phrase "action for injury to the rights of another" was not designed to embrace an action for treble damages under the Clayton Act. This conclusion is unaffected by the fact that in other statutes the same phrase might have a more embracing coverage.

16. The next question is whether causes of action which would otherwise have been barred by the three year statute of limitations embodied in Clause Second of Section 101 of the Oklahoma Code of Civil Procedure have been preserved by Section 106. To secure the benefit of that section, the plaintiff must show, among other things, first, that he commenced an action upon that particular cause within due time (that is, within three years after it accrued) ; second, that he failed in that action otherwise than upon the merits; and third, that he brought a new action within one year after the failure.

17. The plaintiff in this case says he met that threefold test. He contends that he presented to the United States District Court for the Western District of Oklahoma on April 17, 1931, in Law No. 4520 all the causes of action here involved; that in that action he failed otherwise than upon the merits; and that he brought suit within one year after the failure. This contention requires careful scrutiny.

18. I have in the findings of fact analysed in some detail both the complaint filed in No. 4520 (fdgs. 18–30) and the declaration filed here (fdgs. 6–17). I conclude that the first eight counts and the tenth count presented in the case at bar were sufficiently presented on April 17, 1931, to the United States District Court for the Western District of Oklahoma to gain the benefit of Sec-

tion 106 of the Code of Civil Procedure. It is true that there are parts of Counts 1, 4, 5 and 6 which are none too plainly anticipated (as I have tried to bring out in the last sentence of each of findings 21, 24, 25 and 26), and it would be reasonable to take the view that count 10 was not anticipated (see fdg. 30) ; but there are strong reasons for concluding that the first eight counts and the tenth count here were anticipated. The earlier complaint described the generic conspiracy about as broadly, though not so minutely, as the present declaration. (Cf. fdgs. 7 and 19). The earlier complaint named the same theatres and pointed plainly enough to the sort of wrongs with which the defendants are now charged and the sort of damages for which the plaintiff now seeks recovery. United States District Judge Broaddus in a careful opinion has already given the earlier complaint a broad construction in deciding that it anticipated a suit in his court cognate to the case at bar. Momand v. Twentieth Century-Fox Film Corp. et al., D.C.W.D.Okl., Nos. 6516–6517, Oct. 4, 1941. And the Oklahoma state decisions seem to tolerate loose statements of cases and permit the defects to be supplied by liberal amendments relating back to the date suit was begun.

19. Before going further I should perhaps insert one parenthetical comment, in view of what I have heretofore (conc. 6–8) said about the time at which a cause of action under the anti-trust laws accrues. The plaintiff on April 17, 1931, could not have effectively presented to any court causes of action accruing from invasions that occurred after the assignment of April 13, 1931. But the plaintiff at any time after the second assignment on December 31, 1933, could have effectively presented the causes of action which accrued to his assignors between April 13, 1931, and December 31, 1933, and which they assigned to him on the later date. On August 27, 1934, he did effectively present causes of action accruing in the three preceding years (Ex. D and fdg. 33) with the exception of the causes of action against Loew's, Inc., of which I say more below (conc. 23). But due to Section 101 Second he could not on August 27, 1934, make a timely presentation of any causes which accrued between April 13, 1931, and August 27, 1931.

20. Although the plaintiff's complaint of April 17, 1931, anticipated virtually all of the first eight counts and the tenth count of the present declaration, it did not antici-

pate the ninth count (fdg. 29). August 27, 1934, was the first time the plaintiff made reference to the interest of Momand Realty Corporation in real estate equities in Clinton and Wewoka (fdgs. 29, 31–33) which is the substance of the interest alleged by Count 9 to have been damaged.

21. Even though most of the causes of action now at bar were presented in the United States District Court for the Western District of Oklahoma, the plaintiff does not get the benefit of Section 106 unless he failed otherwise than upon the merits and he brought suit within one year after the failure.

22. The defendants urge that the plaintiff's action did not "fail * * * otherwise than upon the merits" but was abandoned. In determining whether a particular action did or did not "fail * * * otherwise than upon the merits" within the meaning of that phrase in an Oklahoma statute, this court and the state courts of Massachusetts accept the construction of the Oklahoma state courts. The Oklahoma state courts, in construing the application of their own statute to a case tried in another forum, would certainly turn to the law of that forum to learn if the action was disposed of "upon the merits", and might turn to the law of that forum to learn if the action "failed". There is a square decision of the forum where No. 4520 was tried (i. e. the United States District Court for the Western District of Oklahoma) holding that in No. 4520 the plaintiff's action failed otherwise than on the merits. See fdg. 14 in Momand v. Twentieth Century-Fox Film Corp. et al., D.C.W.D.Okl., Nos. 6516, 6517, Oct. 4, 1941. And since that decision finds support in an Oklahoma state court case (Wilson v. Wheeler, 28 Okl. 726, 115 P. 1117), I conclude that, within the meaning of Section 106 of the Oklahoma Code of Civil Procedure, the plaintiff in Law No. 4520 failed otherwise than upon the merits.

23. One barrier remains. The plaintiff, to secure the benefit of Section 106, must bring his action within one year after the failure of his earlier action. Clearly as to most of the defendants, the plaintiff met this requirement. (Cf. fdgs. 2 and 34.) But as to the defendant Loew's Inc., this is not true. The plaintiff's action against Loew's, Inc., failed on August 27, 1934 when Loew's was dropped as a defendant (fdg. 33) and no new action was begun against Loew's until June 7, 1937 (fdg. 2).

24. It now remains to summarize the preceding discussion.

25. With respect to its causes of action against Loew's, Inc., the plaintiff does not get the benefit of Section 106 because his action against Loew's, Inc., failed August 27, 1934, and was not revived within one year. His causes of action against Loew's, Inc., are barred three years after they accrued. Oklahoma Code of Civil Procedure, § 101, Second. Thus, causes of action which accrued against Loew's prior to June 7, 1934 (i. e. three years before the instant suit was begun) are barred in the instant case. Since (even if Loew's was included in the second assignment) the plaintiff's assignment covers only causes of action that accrued prior to December 31, 1933 (conc. 8), all claims against Loew's are barred.

26. With respect to the causes of action in the ninth count of the declaration at bar, the plaintiff has against the defendants other than Loew's, Inc., the benefit of § 106, Oklahoma Code of Civil Procedure, but only from August 27, 1934, when he first alleged those causes of action. The plaintiff is barred on that count (as against the defendants other than Loew's Inc.) for causes of action which accrued three years prior to August 27, 1934, that is, causes of action which accrued prior to August 27, 1931. Oklahoma Code of Civil Procedure, § 101, Second.

27. With respect to such of the causes of action set forth in the first eight counts and in the tenth count of the declaration at bar as were in existence on April 13, 1931 (when the plaintiff secured his first assignment), the plaintiff has the benefit, as against all the defendants except Loew's, Inc., of Section 106 of the Oklahoma Code of Civil Procedure. As to those causes (which constitute the major part of the present controversy), Oklahoma's bar is effective as of April 17, 1928, (which is three years prior to the filing of the complaint in No. 4520). Oklahoma Code of Civil Procedure, § 101, Second. That barrier is of only academic interest here, since, as I have already said (conc. 10), Mass.G.L.(Ter.Ed.) c. 260, § 2 bars the plaintiff on all causes of action which accrued prior to June 7, 1931 (except in so far as that barrier is lifted by Section 5 of the Clayton Act).

28. With respect to such of the causes of action set forth in the first eight counts and the tenth count of the declaration at bar

as arose after April 13, 1931 (when the plaintiff secured his first assignment) and prior to August 27, 1931 (three years before the Amended and Supplemental Petition) the plaintiff is barred. Oklahoma Code of Civil Procedure, § 101, Second. (Section 5 of the Clayton Act, while theoretically available to suspend the bar, is in fact of no help since on and after August 27, 1931, no applicable federal equity or criminal suit was pending, conc. 29–33).

29. *To what extent was the period of limitation enlarged by suits instituted by the United States.* The plaintiff urges that the six year Massachusetts statute of limitations did not bar all causes of action which accrued prior to June 7, 1931, because during the period prior to June 7, 1931, the United States had instituted, and there were pending, proceedings in equity or criminal prosecutions to restrain or punish the defendants for the matters complained of in the present suit. He places his reliance on the last paragraph of Section 5 of the Clayton Act, Act of October 15, 1914, c. 323, 38 Stat. 731, 15 U.S.C.A. § 16 which provides:

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

30. The first proceeding which the plaintiff says comes within that statute is Eq. No. 45–99. That proceeding could not toll as against either Columbia Pictures Corporation or Loew's, Inc., the Massachusetts six year statute of limitations since those companies were not parties to that proceeding. (Moreover, as I have already noted in conclusion 25, Loew's has in any event the benefit of the shorter Oklahoma three year statute of limitation which could not be tolled by a proceeding that ended July 21, 1931.) But, as to the other defendants, Eq. No. 45-99 during its pendency did toll the statute of limitations as to the matters complained of, that is, credit committee rules, credit committee questionnaires and supplemental agreements. All ten of the counts at bar incorporate references to these practices but Counts 4 and 5, and perhaps 1, rely particularly upon damage alleged to be due to these practices (fdgs. 8, 11 and 12). The period when Eq. No. 45-99 was pending was from June 20, 1928, to July 21, 1931. It follows that in so far as credit and allied practices are complained of in Counts 1 through 8 and in Count 10 (but not in Count 9, since, as stated above in conclusion 26, that count does not reach back of August 27, 1931), the plaintiff (as against the defendants other than Loew's and Columbia) may reach back to all causes of action that accrued subsequent to nine years one month and one day prior to June 7, 1937. The substance of this paragraph may be summarized in this way: in so far as the plaintiff complains of damages due to credit and allied practices of the defendants, he can go back as far as May 6, 1928, except as against Loew's and Columbia and except in so far as his rights are derived from assignment by Momand Realty Corporation.

31. The next proceeding which the plaintiff says comes within Section 5 of the Clayton Act and therefore tolls the statute of limitations is Eq. No. 45-100. That proceeding could not toll as against either Columbia Pictures Corporation or Loew's, Inc., the Massachusetts six year statute of limitations since those companies were not parties to that proceeding. (Moreover, as I have already noted in conclusion 25, Loew's has in any event the benefit of the shorter Oklahoma three year statute of limitations which could not be tolled by a proceeding that ended July 21, 1931.) But, as to the other defendants, Eq. No. 45-100 during its pendency did toll the statute of limitations as to the matters complained of, that is, uniform contracts, contract provisions for arbitration and for enforcing awards, organization of film boards, agreements for arbitration and enforcing awards, provisions of rules for arbitration and enforcing awards, and supplemental agreements for enforcing awards. All ten of the counts at bar incorporate references to these practices but Count 1 (fdg. 8) relies particularly upon damage alleged to be due to these practices. The period when Eq. No. 45-100 was pending was from June 20, 1928, to July 21, 1931. It follows that in so far as uniform contract and allied practices are complained of in Counts 1 through 8 and in Count 10 (but not in Count 9, since, as stated above in conclusion 26, that count does not reach back of August 27, 1931) the plaintiff as against the defendants other than Loew's and Columbia may reach back to all causes of action that accrued subsequent to nine years, one month and one day prior to June 7, 1937. Another way of stating this is that

in so far as the plaintiff complains of damages due to uniform contract and allied practices of the defendants he can go back as far as May 6, 1928, except as against Loew's and Columbia and except in so far as his rights are derived from assignment by Momand Realty Corporation.

32. The proceedings against the Fox and Warner interests under Section 7 of the Clayton Act, 15 U.S.C.A. § 18 (fdgs. 38 and 39) have so remote a connection with the matters here complained of that I conclude they do not toll the statute. They were proceedings to divest ownership of stock in producing companies. I am not impressed with the argument that those actions were broadly directed at the prevention of a monopoly in the motion picture industry and that monopoly is one of the anti-trust violations with which the present defendants are charged. The substance of the present declaration, despite its references to monopoly in the motion picture industry, is that there has been a conspiracy by producers and distributors to injure exhibitors. The substance of the Fox and Warner cases was alleged unlawful acquisition of stock in producing companies. None of the plaintiff's assignors was a producer or distributor and they were remotely, if at all, interested in the matters alleged in the proceedings referred to in findings 38 and 39.

33. The other proceedings, identified but not described in findings 40 through 50, are based in each case largely upon alleged wrongs in a particular area, Southern California, Chicago, Missouri and so forth. Some of them are further described in the Temporary National Economic Committee's Monograph No. 43, "The Motion Picture Industry—A Pattern of Control" (Washington, 1941). In none of the pleadings in those proceedings is there any reference to alleged wrongs in Oklahoma or alleged wrongs directed specifically against the assignors of this plaintiff. In at least one case the proceedings are not only remote in place but also in time, having begun after this suit was begun. In no one of them would a judgment be "prima facie" evidence against the defendants in this case, because the wrongs there alleged, while of the same general type as those here alleged, were definitely localized. Cf. United States v. Moser, 266 U.S. 236, 241, 242, 45 S.Ct. 66, 69 L.Ed. 262; Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069. Since judgments there could not serve as prima facie evidence here, those proceedings cannot toll the statute of limitations for the benefit of this plaintiff. This is clear from the juxtaposition of the two paragraphs which together constitute Section 5 of the Clayton Act. Act of October 15, 1914, c. 323, 38 Stat. 731, 15 U.S.C.A. § 16. I conclude that none of those proceedings toll the statute of limitations in the present case.

34. Intermediate Summary. Recovery cannot be had against Loew's, Inc. for any cause of action (conc. 25).

35. Recovery cannot be had on any cause of action which was assigned by Momand Realty Corporation and which accrued prior to August 27, 1931 (conc. 26, 30 and 31).

36. Subject to conclusions 34 and 35, the statute of limitations is not a barrier to recovery on such parts of causes of action as arose out of the credit practices of the defendants, other than Columbia, and as accrued subsequent to May 6, 1928 (conc. 30) except that the statute is a bar to such of those parts of causes of action as accrued in the five weeks between July 21, 1931, when Eq. No. 45-99 terminated (conc. 30) and August 27, 1931, when the bar of the Oklahoma three year statute was lifted (conc. 28).

37. Subject to conclusions 34 and 35, the statute of limitations is not a barrier to recovery on such parts of causes of action as arose out of the uniform contracts of the defendants, other than Columbia, and as accrued subsequent to May 6, 1928 (conc. 31) except that the statute is a bar to such of those parts of causes of action as accrued in the five weeks between July 21, 1931, when Eq. No. 45-100 terminated (conc. 31) and August 27, 1931, when the bar of the Oklahoma three year statute was lifted (conc. 28).

38. Subject to conclusions 34–37, the statute of limitations is not a barrier to recovery of such parts of causes of action as accrued subsequent to June 7, 1931 (conc. 10) except that the statute is a bar to such parts of causes of action as accrued in the four and one half months between April 13, 1931, and August 27, 1931 (conc. 28).

39. Final Summary. To put conclusions 34–38 in short but accurate compass, and indeed to summarize this whole case in a sentence, Loew's does not have to respond to any cause of action here alleged; Columbia may have to respond for causes of action which accrued between August 27,

1931, and December 31, 1933; and the other defendants may have to respond for as long a period as Columbia and also may have to respond for such causes of action as arose out of credit policies and uniform contracts in the period between May 6, 1928, and July 21, 1931, except such of those causes of action as were derived from Momand Realty Corporation.