## LAWLOR *v.* LOEWE.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 358.   Argued December 10, 11, 1914.—Decided January 5, 1915.

Irrespective of compulsion or even agreement to observe its intimation, the circulation of a "we don't patronize" or "unfair" list manifestly intended to put the ban upon those whose names appear therein, among an important body of possible customers, combined with a view to joint action and in anticipation of such reports, is within the prohibition of the Anti-trust Act of July 2, 1890, if it is intended to restrain and does restrain commerce among the States. *Eastern States Retail Lumber Dealers Association* v. *United States*, 234 U. S. 600.

This court agrees with the courts below that the action of the unions and associations to which defendants belonged in regard to the use and circulation of "we don't patronize" and "unfair dealer" lists, boycotts, union labels and strikes, amounted to a combination and conspiracy forbidden by the Anti-trust Act of July 2, 1890.

In this case, *held* that the trial court properly instructed the jury to the effect that defendants, members of labor unions who paid their dues and continued to delegate authority to their officers to unlawfully interfere with the interstate commerce of other parties, are jointly liable with such officers for the damages sustained by their acts.

Members of unions and associations are bound to know the constitutions of their societies; and, on the evidence in this case, the jury might well find that the defendants who were members of labor

unions knew how the words of the constitutions of such unions had been construed in the act.

The use in this case of the word "proof" by the trial judge in its popular way for "evidence," *held*, in view of the caution by the judge, not to have prejudiced the defendants.

A verdict for damages resulting from an illegal combination in restraint of interstate trade under the Anti-trust Act of 1890, may include damages accruing after commencement of the suit but as the consequence of acts done before and constituting part of the cause of action declared on.

In this case, introduction of newspapers was not improper to show publicity in places and directions to bring notice home to defendants and to prove intended and detrimental consequences of the acts complained of.

Letters from customers of a boycotted manufacturer, giving the boycott as reason for ceasing to deal with him, *held* admissible in this case.

209 Fed. Rep. 721, affirmed.

THE facts in this case, which is known as the *Danbury Hatters' Case*, involving the validity of a verdict for damages resulting from a combination and conspiracy in restraint of trade under § 7 of the Anti-trust Act, are stated in the opinion.

*Mr. Alton B. Parker*, with whom *Mr. Frank L. Mulholland* was on the brief, for plaintiffs in error:

The trial court erred in refusing to instruct the jury as to the coercive character of the combination alleged in the complaint, as to the legality of the Hatters' Union label and as to the character of the boycott alleged.

The combination charged falls within the class of restraints of trade aimed at compelling third parties and strangers involuntarily not to engage in the course of trade except on conditions that the combination imposes (*Loewe* v. *Lawlor*, 208 U. S. 274) and the requests for instructions to this effect should have been granted.

It was not unlawful to attempt to unionize, that is, establish union conditions in, the plaintiffs' factory, by

means of a strike. It is the absolute right of every workman to exercise his own option in regard to the persons with whom he will agree to work or with whom he will continue to work, and, therefore, union workmen may refuse to continue to work with those who are not members of their union. *Adair* v. *United States*, 208 U. S. 161, and cases cited in margin of page 175; *Allis-Chalmers Co.* v. *Iron Moulders' Union*, 150 Fed. Rep. 155, 172; *National Protective Ass'n* v. *Cumming*, 170 N. Y. 315; *Allen* v. *Flood* (1898), App. Cas. 1.

A strike does not become unlawful because it is the result of orders by the officers of a labor union to which the strikers belong. *Thomas* v. *Cincinnati &c. R. R.*, 62 Fed. 803, 817; *Wabash Ry.* v. *Hannahan*, 121 Fed. 563, 571; *Delaware &c. R. R.* v. *Switchmen's Union*, 158 Fed. Rep. 541, 544; *Aluminum Castings Co.* v. *Local No. 84*, 197 Fed. Rep. 221, 223; *Saulsberry* v. *Coopers' Union*, 147 Kentucky, 170, 174; *Jose* v. *Metallic Roofing Co.* (1908), App. Cas. 514, 518.

The union label of the United Hatters is, in the States where it is registered according to law, a statutory trademark, and the officers and agents of the United Hatters have the same right to solicit trade for hats bearing their label as any merchant has to solicit trade for goods bearing his trade-mark; and the plaintiffs cannot recover in this action for damages resulting from the loss or diminution of business due solely to an unusual demand for union-label hats. Laws for the registration and protection of trade-union labels are in force in at least forty-one States and Territories (Spedden on the Trade Union Label, p. 97), and the constitutionality of these statutes has uniformly been upheld. 7 Labbatt's Master and Servant, p. 8656, § 2786; *Perkins* v. *Heert*, 158 N. Y. 306. A voluntary withholding of patronage by members of labor unions and by those who sympathize with organized labor from all goods except those which bear the union

label is not unlawful and is not a boycott, in the legal sense of the term.

Members of a combination having a common interest to subserve may inform one another of the names of those whom they deem inimical; this does not constitute a threat or intimidation and does not amount to coercion. 7 Labbatt's Master and Servant, p. 8453; *Montgomery Ward & Co.* v. *South Dakota Ass'n,* 150 Fed. Rep. 413; Van Orsdel, J., in *American Federation* v. *Buck's Stove Co.,* 33 App. D. C. 83, 123; *Gray* v. *Building Trades Council,* 91 Minnesota, 171.

In the legal sense of the term, the word threat does not embrace every announcement of an intention to do an act which will result in an injury to another; it embraces only the announcement of an intention to do an unlawful act. 7 Labbatt's Master and Servant, pp. 8448, 8458; *National Protective Ass'n* v. *Cumming,* 170 N. Y. 315, 329; *Cote* v. *Murphy,* 159 Pa. St. 420, 431; *Macauley Bros.* v. *Tierney,* 19 R. I. 255; *Payne* v. *Western &c. R. Co.,* 81 Tennessee (13 Lea), 507, 521; dissenting opinion by Caldwell, J., in *Hopkins* v. *Oxley Stave Co.,* 83 Fed. Rep. 912, 924.

And coercion, in the legal sense of the term, does not embrace every constraint placed upon the free will of another, but only such constraint as results from the announcement of an intention to do, or from the doing of, an unlawful act to the prejudice of the person constrained. 7 Labbatt's Master and Servant, pp. 8448, 8458; *Parkinson Co.* v. *Building Trades Council,* 154 California, 581.

Since the defendants in this case, although members of local unions of hatters which were affiliated with the national organization known as the United Hatters of North America, did not participate in the acts of the officers and agents of the national association which are relied upon to establish the allegation of the complaint,

they can be held liable only on the ground that they had knowledge of, and, having knowledge, acquiesced in, those acts; membership in a local union and the payment of dues are not alone sufficient to make the defendants liable for the unlawful acts of the officers and agents of the national association. *Benton* v. *Minneapolis Tailoring Co.*, 73 Minnesota, 498; *United States* v. *Cohen*, 128 Fed. Rep. 615, affirmed, 145 Fed. Rep. 1, writ of error denied, 200 U. S. 618; *Lawlor* v. *Loewe*, 187 Fed. Rep. 522.

It was error for the trial court to permit the defendants who testified to be cross-examined as to whether they continued to pay dues after the service of the complaint, whether they investigated the truth of the matters therein alleged and whether they made any attempt to prevent the election of the same officers as before. *Lawlor* v. *Loewe*, 187 Fed. Rep. 522, 527.

It was error to admit in evidence articles and items from newspapers published in the vicinity in which the defendants resided for the purpose of proving knowledge of their contents by the defendants who were not shown to have read the newspapers. *Leeson* v. *Holt*, 1 Stark. 186; *Graham* v. *Hope*, Peake's N. P. Cas. 154; *Roberts* v. *Spencer*, 123 Massachusetts, 397; *Clark* v. *Ricker*, 14 N. H. 44, 48; *Milbank* v. *Dennistoun*, 10 Bosw. (N. Y.) 382, 393. Hence it was also error to admit in evidence items from the Journal of the United Hatters and from the American Federationist.

To make a newspaper publication admissible in evidence to show knowledge of their contents, the facts therein stated must be established by independent evidence.

Newspaper publications are not admissible to prove the truth of the statements therein contained. 13 Halsbury's Laws of England, p. 565, citing *Bossinore (Lord)* v. *Mowatt* (1850), 5 Jur. 238; 9 Am. & Eng. Enc. L., 2d ed.,

p. 885; *Child* v. *Sun Mut. Ins. Co.*, 3 Sandf. (N. Y.) 26, 43; *Fosgate* v. *Herkimer Mfg. Co.*, 9 Barb. (N. Y.) 287; *Downs* v. *N. Y. Cent. R. R.*, 47 N. Y. 83; *Riley* v. *St. John*, 11 New Bruns. 78.

The testimony of witness for the plaintiffs as to the reason given by retail dealers in hats, who bought hats from jobbers or wholesale dealers purchasing their goods from the plaintiffs, for withdrawing their patronage from these jobbers or wholesale dealers, was not admissible. *Tilk* v. *Parsons*, 2 C. & P. 202; *Lawlor* v. *Loewe*, 187 Fed. Rep. 522, 527.

Depositions containing no material nor relevant testimony but which merely disclosed the fact that the witnesses refused to answer questions on the ground that their testimony might incriminate them were inadmissible and their admission in evidence constitutes prejudicial error. *Philin* v. *Kenderline*, 20 Pa. St. 354; *Carne* v. *Litchfield*, 2 Michigan, 340; *Garrett* v. *St. Louis Transit Co.*, 219 Missouri, 65, 69.

The trial court erred in admitting evidence of, and allowing recovery for, damages accruing after the commencement of the action. The wrongful combination or conspiracy alleged in the case at bar is a continuing wrong of a temporary, removable character for which successive actions may be maintained from time to time as damages accrue. Obviously it is not distinguishable in this respect from trespasses and nuisances which are not of a permanent nature. The plaintiffs should therefore have been limited in their recovery to the damages which had accrued at the time when the action was commenced. *Denver City Water Co.* v. *Middaugh*, 12 Colorado, 432; *Savannah &c. Co.* v. *Bourquin*, 51 Georgia, 378; *Bailey* v. *Heintz*, 71 Ill. App. 189; *Catlin Coal Co.* v. *Lloyd*, 109 Ill. App. 122; *Gebhardt* v. *St. Louis &c. R. R.*, 122 Mo. App. 503; *Troy* v. *Chesshire R. R.*, 23 N. H. (3 Fost.) 83, 101; *Brewster* v. *Sussex R. R.*, 40 N. J. L. (11 Vroom)

57; *Church* v. *Paterson &c. R. R.*, 66 N. J. L. (37 Vroom) 218, 231; 68 N. J. L. (39 Vroom), 390; *Blunt* v. *McCormick*, 3 Denio (N. Y.), 283; *Uline* v. *N. Y. Cent. R. R.*, 101 N. Y. 98, 109–116; *Park* v. *Hubbard*, 134 App. Div. 468; 198 N. Y. 136; *Duncan* v. *Markley*, 1 Harper (S. Car.), 276; *Iron Mountain Ry.* v. *Bingham*, 87 Tennessee, 522, 536; *Cobb* v. *Smith*, 38 Wisconsin, 21, 36; *Hadler* v. *Griebew*, 61 Wisconsin, 500.

*Mr. Walter Gordon Merritt* and *Mr. Daniel Davenport* for defendants in error:

The court properly and adequately charged the jury as to what constituted an unlawful restraint of interstate trade under the Sherman Anti-Trust Act as applied to the allegations and issues in this case. The testimony clearly establishes a conspiracy in restraint of trade among the States, and any act, though otherwise innocent, done in carrying out that illegal conspiracy was unlawful and for the damage to their business caused thereby the plaintiffs are entitled to recover. *Loewe* v. *Lawlor*, 208 U. S. 274; *Aikens* v. *Wisconsin*, 195 U. S. 194. The attempted distinction between the primary and secondary boycotts is also not pertinent, because the prohibitions of the Sherman Anti-Trust Act extend to both alike. The act recognizes no such distinction. *Eastern States Lumber Dealers* v. *United States*, 234 U. S. 600. For the same reason the use of "unfair" and "we don't patronize" lists by the defendants was unlawful under the Sherman Act. As defendants used the union label as an instrument to carry out their conspiracy to restrain the plaintiffs' interstate trade, the plaintiffs can recover for the damages which resulted from such illegal use. And since the strike of the plaintiffs' workmen, ordered by the officers of the United Hatters, was a step in carrying out the conspiracy, it was unlawful and the damages which directly and proximately resulted to the plaintiffs' business there-

from are recoverable in this action, even though the defendants did not intend to resort to interstate boycotting, unless the same became necessary to accomplish their object of unionizing the plaintiffs' factory. *Davis v. United States,* 107 Fed. Rep. 754.

The charge of the court to the effect that the individual defendants, members of the union, were liable under the Sherman Anti-Trust Act, if they knew, or ought to have known, or were in duty bound to know, that their union and its officers were engaged in the conspiracy to restrain the plaintiffs' interstate trade, was under the circumstances of the case correct. *Rogers v. Vicksburg Ry.,* 194 Fed. Rep. 65; *Martin v. Webb,* 110 U. S. 7; *Jones v. Maher,* 116 N. Y. Supp. 180. Where an agent is enabled to commit unlawful acts through the negligence of his principal, the latter may even be held criminally liable. Clark & Sykes on Agency, p. 1141; *Commonwealth v. Morgan,* 107 Massachusetts, 199. The officers of the union, in carrying out the conspiracy, were acting within the scope of their employment and in furtherance of the organization's purposes, and the defendants' conduct warranted them in assuming that they were acting with the defendants' authority and approval. Defendants are liable under the rule of *respondeat superior.* Dicey on Parties, p. 170; Meacham on Agency, par. 72; Clark & Sykes on Agency, p. 61; *Willcox v. Arnold,* 162 Massachusetts, 577; *McDermott v. Wilhelmina,* 24 R. I. 535; *Supreme Lodge v. Knight,* 117 Indiana, 489. The individual members of these associations are liable as principals for what their officers did in the performance of their constitutional duty to unionize all the shops in the trade, even though they did not know of the particular acts done or may have disapproved of or have forbidden them. *New York Central v. United States,* 212 U. S. 481; *Phila. & Reading R. R. v. Derby,* 14 How. 468; *Lake Shore Ry. v. Prentice,* 147 U. S. 103; Holmes on Agency, 4 Harv.

Law Rev. 348; Wigmore, 7 Harv. Law Rev. 315, 384, 440. The Sherman Act is a highly remedial statute and on its face indicates an intent to apply those principles to all associations, which may violate it. Since the union was authorized to engage in strikes, neither it nor its members can escape responsibility for illegal strikes conducted in furtherance of its purposes. *Taff Vale Ry.* v. *Amalgamated Society* (1901), A. C., 426; *Giblan* v. *National Laborers' Union*, 2 K. B. 600 (1903); *Kinver* v. *Phœnix Lodge*, 7 Ont. Rep. 387; Permant on Trade Unions, p. 81; *Lucke* v. *Clothing Cutters*, 19 L. R. A. 408. If the union could be held liable, the members thereof, being unprotected by incorporation, are liable. *Vredenburg* v. *Behan*, 33 La. Ann. Rep. 627; *Patch Mfg. Co.* v. *Protection Lodge*, 77 Vermont, 294; *Patch Mfg. Co.* v. *Capeless*, 63 Atl. Rep. 939; *Ill. Cent. Ry.* v. *International Ass'n*, 190 Fed. Rep. 910; *Aluminum Castings Co.* v. *Local No. 84*, 197 Fed. Rep. 221; *Lawler* v. *Murphy*, 58 Connecticut, 294; 8 L. R. A. 112; *In re Peck*, 206 N. Y. 55; *Cheney* v. *Goodwin*, 88 Maine, 567; *Bennett* v. *Lathrop*, 71 Connecticut, 613; *Hodgson* v. *Baldwin*, 65 Illinois, 532; *Jenne* v. *Matlack*, 41 S. W. Rep. 11; *Crawley* v. *American Society*, 139 N. W. Rep. 734; *McKenney* v. *Bowie*, 94 Maine, 397; *Willcox* v. *Arnold*, 162 Massachusetts, 577; *Tyrrell* v. *Washburn*, 88 Massachusetts, 466; Bacon on Societies (1904), § 120; Niblack on Voluntary Societies (1888), §§ 98–100.

The rule of *respondeat superior* applies to conspiracies the same as to any other torts. *Schultz* v. *Frankfort Co.*, 139 N. W. Rep. 387. An agent has often no financial resources, and in order to approximate justice, it is necessary that the injured party should be allowed to resort to the principal in order to find a full purse. Under the statutes of Edward I, the injured party was required to exhaust his remedy against the agent and could only look to the principal for satisfaction of the deficiency.

This shows that the basis of imputed liability is the necessity of finding a responsible party, for the protection of society. 2 Pollock & Maitland, p. 533. The conditions surrounding the organization of a modern labor union call eloquently for the application of this line of reasoning. If an individual corporation can be held liable for the acts of ten thousand agents, there can be no reason why one hundred thousand members of a single labor union should not divide responsibility for the acts of ten agents. If they are actually innocent of wrongdoing, they can compel their fellow members to pro rate the liability. *Wooley* v. *Batte,* 2 C. & P. 417; *Horbach* v. *Elder,* 18 Pa. St. 33; *Vandiver* v. *Pollak,* 19 L. R. A. 628 (9 Cyc. 805).

The plaintiffs are entitled to recover all damages which are the proximate result of acts committed before the suit was commenced, even though such damages continued or resulted therefrom after suit was commenced. Proof of damage due to the acts complained of may extend to the date of the verdict. *Wilcox* v. *Plummer,* 4 Peters, 172; *New York* v. *Estill,* 147 U. S. 591; *Occidental Mining Co.* v. *Comstock Tunnel Co.,* 125 Fed. Rep. 244; *Joseph Schlitz Brewing Co.* v. *Comton,* 18 L. R. A. 390; *Ridley* v. *Seaboard R. R.,* 32 L. R. A. 708; *Jones* v. *Allen,* 85 Fed. Rep. 527; 1 Sutherland on Damages, § 113; *C. & N. W. Ry.* v. *Hoag,* 90 Illinois, 347; *Hicks* v. *Herring,* 17 California, 569; *Weston* v. *Barnicoat,* 175 Massachusetts, 456; *Cooper* v. *Stillers,* 30 App. D. C. 567; 23 Cyc. 446; *Troy* v. *Cheshire Railroad Co.,* 23 N. H. 101; *Powers* v. *Council Bluffs,* 45 Iowa, 652; *National Copper Co.* v. *Minnesota Mining Co.,* 57 Michigan, 83; *Lord* v. *Carbon Mfg. Co.,* 6 Atl. Rep. 812; 1 Joyce on Damages, par. 250; 1 Sedgwick on Damages, 9th ed., § 869.

The court properly left the jury to determine what portion of the continuing damages was due to acts prior to the date of suit for which recovery could be had, and

what portion was due to acts subsequent to date of suit
for which recovery could not be had in this suit.. *Jen-
kins* v. *Penn. R. R.*, 57 L. R. A. 309; *C. & N. W. Ry.* v.
*Hoag* (*supra*); *Post* v. *Hartford St. Ry.*, 72 Connecticut,
362.

It was proper to cross-examine the defendants as to
whether, after the suit was commenced, they continued
paying dues and reëlected the same officers who committed
the unlawful acts, since such evidence bore upon the in-
tent and knowledge of the defendants relative to similar
transactions, it could properly have been admitted on
direct examination. *Exchange Bank* v. *Moss*, 149 Fed.
Rep. 340; *Wood* v. *United States*, 16 Peters, 342; Wigmore
on Evidence, §§ 316, 320, 325, 333, 363, 364, 370; *Moore*
v. *United States*, 150 U. S.. 60.

The subsequent conduct of the defendants toward their
agents tended to prove the previous authority of those
agents. *Fisher* v. *Campbell*, 9 Porter, 215 (Ala.); *Columbia
Land Co.* v. *Tinsley*, 60 S. W. Rep. 10; *Cheshire Insti-
tution* v. *Vandergrift*, 95 N. W. Rep. 615; *Rice* v. *Ege*,
42 Fed. Rep. 663; *Elwell* v. *Russell*, 71 Connecticut, 465;
1 Greenleaf on Evidence, § 53.

It was proper for salesmen to testify as to the reasons
given them by customers for refusing to purchase plain-
tiffs' hats. *Elmer* v. *Fessenden*, 151 Massachusetts, 361;
*Hine* v. *N. Y. El. R. R.*, 149 N. Y. 154; *Casey* v. *Typo-
graphical Union*, 45 Fed. Rep. 135; *Maryland Lodge* v.
*Adt*, 100 Maryland, 238; Wigmore on Evidence, § 1729,
subd. 2; *Hadley* v. *Carter*, 8 N. H. 42; *Steketee* v. *Kimm*,
48 Michigan, 322; *Webb* v. *Drake*, 52 La. Ann. 290; *Weston*
v. *Barnicoat*, 175 Massachusetts, 456; *Bausbach* v. *Reiff*,
91 Atl. Rep. 224 (Pa.).

Extracts from the Journal of the United Hatters and
extracts from the daily newspapers of Danbury and Nor-
walk relative to the boycotting operations of the United
Hatters were properly admitted in evidence to show that

the defendants had knowledge of the illegal acts which were' being carried on by their organization. *Adams* v. *State*, 25 Oh. St. 584; *American Fire Ins. Co.* v. *Landfare*, 56 Nebraska, 482; 2 Taylor on Evidence, §§ 1656 and 1665–6; *Leeson* v. *Holt*, 1 Stark. 186 (1816); Wigmore on Evidence, §§ 251–255.

Extracts from the daily papers referring to the boycott, were admissible in evidence as showing the general publicity intentionally given to the boycott for the purpose of intimidating the plaintiffs' customers.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action under the act of July 2, 1890, c. 647, § 7, 26 Stat. 209, 210, for a combination and conspiracy in restraint of commerce among the States, specifically directed against the plaintiffs (defendants in error), among others, and effectively carried out with the infliction of great damage. The declaration was held good on demurrer in *Loewe* v. *Lawlor*, 208 U. S. 274, where it will be found set forth at length. The substance of the charge is that the plaintiffs were hat manufacturers who employed non-union labor; that the defendants were members of the United Hatters of North America and also of the American Federation of Labor; that in pursuance of a general scheme to unionize the labor employed by manufacturers of fur hats (a purpose previously made effective against all but a few manufacturers), the defendants and other members of the United Hatters caused the American Federation of Labor to declare a boycott against the plaintiffs and against all hats sold by the plaintiffs to dealers in other States and against dealers who should deal in them; and that they carried out their plan with such success that they have restrained or destroyed the plaintiff's commerce with other States. The case now has been tried,

the plaintiffs have got a verdict and the judgment of the
District Court has been affirmed by the Circuit Court of
Appeals.   209 Fed. Rep. 721; 126 C. C. A. 445.

The grounds for discussion under the statute that were
not cut away by the decision upon the demurrer have been
narrowed still further since the trial by the case of *Eastern
States Retail Lumber Dealers' Association* v. *United States*,
234 U. S. 600.   Whatever may be the law otherwise, that
case establishes that, irrespective of compulsion or even
agreement to observe its intimation, the circulation of
a list of 'unfair dealers,' manifestly intended to put the
ban upon those whose names appear therein, among an
important body of possible customers combined with a
view to joint action and in anticipation of such reports, is
within the prohibitions of the Sherman Act if it is in-
tended to restrain and restrains commerce among the
States.

It requires more than the blindness of justice not to see
that many branches of the United Hatters and the Fed-
eration of Labor, to both of which the defendants belonged,
in pursuance of a plan emanating from headquarters made
use of such lists, and of the primary and secondary boycott
in their effort to subdue the plaintiffs to their demands.
The union label was used and a strike of the plaintiffs'
employés was ordered and carried out to the same end,
and the purpose to break up the plaintiffs' commerce
affected the quality of the acts.   *Loewe* v. *Lawlor*, 208
U. S. 274; 299.   We agree with the Circuit Court of Ap-
peals that a combination and conspiracy forbidden by
the statute were proved, and that the question is narrowed
to the responsibility of the defendants for what was done
by the sanction and procurement of the societies above
named.

The court in substance instructed the jury that if these
members paid their dues and continued to delegate au-
thority to their officers unlawfully to interfere with the

plaintiffs' interstate commerce in such circumstances that they knew or ought to have known, and such officers were warranted in the belief that they were acting in the matters within their delegated authority, then such members were jointly liable, and no others. It seems to us that this instruction sufficiently guarded the defendants' rights, and that the defendants got all that they were entitled to ask in not being held chargeable with knowledge as matter of law. It is a tax on credulity to ask anyone to believe that members of labor unions at that time did not know that the primary and secondary boycott and the use of the 'We don't patronize' or 'Unfair' list were means expected to be employed in the effort to unionize shops. Very possibly they were thought to be lawful. See *Gompers* v. *United States*, 233 U. S. 604. By the Constitution of the United Hatters the directors are to use 'all the means in their power' to bring shops 'not under our jurisdiction' 'into the trade.' The by-laws provide a separate fund to be kept for strikes, lockouts, and agitation for the union label. Members are forbidden to sell non-union hats. The Federation of Labor with which the Hatters were affiliated had organization of labor for one of its objects, helped affiliated unions in trade disputes, and to that end, before the present trouble, had provided in its constitution for prosecuting and had prosecuted many what it called legal boycotts. Their conduct in this and former cases was made public especially among the members in every possible way. If the words of the documents on their face and without explanation did not authorize what was done, the evidence of what was done publicly and habitually showed their meaning and how they were interpreted. The jury could not but find that by the usage of the unions the acts complained of were authorized, and authorized without regard to their interference with commerce among the States. We think it unnecessary to repeat the evidence of the publicity of this par-

ticular struggle in the common newspapers and union prints, evidence that made it almost inconceivable that the defendants, all living in the neighborhood of the plaintiffs, did not know what was done in the specific case. If they did not know that, they were bound to know the constitution of their societies, and at least well might be found to have known how the words of those constitutions had been construed in the act.

It is suggested that injustice was done by the judge speaking of 'proof' that in carrying out the object of the associations unlawful means had been used with their approval. The judge cautioned the jury with special care not to take their view of what had been proved from him, going even farther than he need have gone. *Graham* v. *United States*, 231 U. S. 474, 480. But the context showed plainly that proof was used here in a popular way for evidence and must have been understood in that sense.

Damages accruing since the action began were allowed, but only such as were the consequence of acts done before and constituting part of the cause of action declared on. This was correct. *New York, Lake Erie & Western R. R.* v. *Estill*, 147 U. S. 591, 615, 616. We shall not discuss the objections to evidence separately and in detail as we find no error requiring it. The introduction of newspapers, etc., was proper in large part to show publicity in places and directions where the facts were likely to be brought home to the defendants, and also to prove an intended and detrimental consequence of the principal acts, not to speak of other grounds. The reason given by customers for ceasing to deal with sellers of the Loewe hats, including letters from dealers to Loewe & Co., were admissible. 3 Wigmore, Evidence, § 1729 (2). We need not repeat or add to what was said by the Circuit Court of Appeals with regard to evidence of the payment of dues after this suit was begun. And in short neither the ar-

gument nor the perusal of the voluminous brief for the plaintiffs in error shows that they suffered any injustice or that there was any error requiring the judgment to be reversed.

*Judgment affirmed.*