314 F.2d 839
 A. C. BECKEN CO., an Illinois corporation, Plaintiff-Appellee,
v.
The GEMEX CORPORATION, a New Jersey corporation,
Defendant-Appellant.
A. C. BECKEN CO., etc., Plaintiff-Appellant,
v.
The GEMEX CORPORATION, etc., Defendant-Appellee.
A. C. BECKEN CO., etc., Plaintiff-Appellee,
v.
The GEMEX CORPORATION, etc., Defendant-Appellant.
 Nos. 13577, 13578, 13759.
 United States Court of Appeals Seventh Circuit.
 Feb. 28, 1963, Rehearing Denied April 9, 1963, en banc.
 
 Lorentz B. Knouff, Marshall Patner, Dixon, Morse, Knouff & Holmes, Chicago, Ill., for A. C. Becken Co.
 Edward A. Haight, Britton A. Davis, William J. Marshall, Jr., Chicago, Ill., for Gemex Corp.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEYCircuit judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 On these appeals we review the action of the district court on remandment, as directed by us on a prior appeal of this case, A. C. Becken Co. v. Gemex Corp., 272 F.2d 1 (7 Cir., 1959). Upon remandment it was the duty of the district court to assess plaintiff's damages and enter judgment that plaintiff recover treble damages and costs of suit, including reasonable attorneys' fees to be fixed by the court. The district court conducted a trial on the issue of damages, filed findings of fact and conclusions of law, assessed plaintiff's damages, and entered judgment for plaintiff for treble damages in the sum of $74,294.04 on September 29, 1961.[1] The court subsequently heard evidence, made findings of fact, filed conclusions of law and entered judgment for $25,000 for attorneys' fees and costs of suit in favor of plaintiff on April 12, 1962.
 
 
 2
 From both the judgments defendant has appealed. From the judgment of September 29, 1961, plaintiff also has appealed.
 
 
 3
 1. In our 1959 opinion, supra at 5, we concluded that the court was led into error in finding as a fact and concluding as a matter of law that plaintiff was not damaged as a result of defendant's refusal to sell watch bands to it after August 2, 1956. We said 'Damage was proved.' We added,
 
 
 4
 'While the evidence now in the record might be sufficient to justify a direction to the district court to compute therefrom plaintiff's actual damages sustained and make an assessment accordingly, we feel that the ends of justice would be better served if this cause be remanded for the purpose of considering the evidence already in the record on the subject of plaintiff's damages, as well as any proper evidence to be offered by defendant, and rebuttal evidence of plaintiff, on subject of plaintiff's damages, and fixing the proper amount of said damages. Such proceedings we now direct.'
 
 
 5
 The record before us shows that the district court on remandment proceeded along the lines suggested. It heard additional evidence which was devoted to actual occurrences during the time which elapsed while the case was being litigated upon appeal. The court thus put itself in a position where it had the benefit, not only of such projections as might have been reasonably based upon the facts appearing at the first trial, which were at that time projected by plaintiff to prove further damages, but it also had the superior advantage of evidence of conditions which had in fact occurred while the case had been on appeal. We concur in the conclusion of the district court that, under these circumstances, evidence of actual occurrences and experiences between the first and last hearings may be considered in connection with the estimates of future damage introduced at the first hearing. Thus, a forecast of tomorrow's weather is always subject to confirmation or modification by tomorrow's observation. While the evidence at the first hearing was a reliable basis for prognostication and was legally admissible to prove damage, no one can deny that to the extent future events modified its correctness, the entire evidence must be considered together. This the court did in this case and we find no error in that respect.
 
 
 6
 2. Plaintiff contends that on remandment the district court erred by considering a deduction for sales commissions in its computation of damages. In its own computation plaintiff had reduced anticipated lost profits by deducting an average figure for sales commissions, this figure being 4.5% Which, according to plaintiff, was its 'average of all sales, from sales on full 10% Commission to sales on no commission at all'. However, the district court did not agree and deducted an additional $11,669.02 as sales commissions, determining that one-half of plaintiff's sales were on full commission, resulting in a deduction of $11,002.22 as the difference above the 4.5% Average for this amount. The court also determined that on one large account there was a 5% Commission and deducted $666.80 as the difference above the 4.5% Average. Plaintiff contends that the court left the 4.5% Figure stand against all remaining sales even though they were not subject to any commission.
 
 
 7
 Recognizing these contentions, the court in finding 8 said:
 
 
 8
 'The evidence is insufficient to permit a finding as to the exact portion of plaintiff's Gemex watchband sales which were and would have been initiated by mail order, for the reasons, among others, that
 
 
 9
 '(a) within two years after filing the instant suit plaintiff destroyed or otherwise made unavailable all its file copies of sales invoices; * * *'.
 
 
 10
 The destruction of these records is referred to by plaintiff in a brief manner:
 
 
 11
 'Defendant argues that it was prejudiced when plaintiff destroyed invoices kept for its own business purposes. Defendant did not make any discovery in this case until after the first appeal was over, and after plaintiff had put in its proof on damages. Defendant never made any discovery on plaintiff's purchases from any seller, or on sales to any buyer. Defendant simply repeats the statement that it was harmed, but never shows how.'
 
 
 12
 We are convinced that in this respect the court acted properly. It was confronted with a difficult task and the difficulty was increased by plaintiff's destruction of its own records within two years after it had filed its suit. In the absence of these records and in view of the uncertainties presented, the court properly estimated this deduction on the basis of existing evidence and reasonable inferences to be drawn therefrom. Plaintiff is not entitled to complain of the results thus reached by the court. The situation which it created by the destruction of these records while the litigation was pending is akin to that created by a party refraining from calling a witness who would be able to testify about a material point. Such conduct is in itself an admission that the intriduction of such evidence would be damaging to the party not producing it. Our attention has not been directed to any evidence in the record to explain why this destruction of records took place while this case was pendente lite. The law is well settled that these circumstances give rise to an inference that the records destroyed would have been unfavorable to plaintiff. It enhances the probative value of such evidence as the court relied upon to prove facts as to which the destroyed records would have been competent proof. 31 C.J.S. Evidence 153, pp. 845-847.
 
 
 13
 The district court in determining the damages which plaintiff was entitled to recover correctly followed the principles of law applicable thereto and we cannot say that its findings of fact were clearly erroneous, under 28 U.S.C.A. Rule 52(a).
 
 
 14
 3. Defendant relies upon its alleged offer on April 14, 1958 to resume selling watchbands to plaintiff and contends that what had initially been a refusal to sell then became a mere refusal to buy, and that no award of damages sustained by plaintiff after that date should have been made. In other words, it is defendant's position that plaintiff's subsequent loss of profits cannot be attributed to the original wrong. We disagree.
 
 
 15
 Defendant's position is based upon the testimony of Ernst Keitel, a former sales representative, who testified that on April 14, 1958 he called upon Raymond Feare, plaintiff's jewelry buyer, and as 'the new representative in the territory' solicited plaintiff's account as a wholesale distributor of Gemex watchbands. Prior to that date Keitel had never met Feare. He was making a call in his own territory, which he had taken over some months previously. He testified that 'I was hoping that we could show him the line with the anticipation, of course, that they should again carry our line.' Feare was not interested.
 
 
 16
 On cross-examination, the following occurred:
 
 
 17
 'Q. Mr. Keitel, did you at that time, make any offer to Mr. Feare to sell him the Gemex line without any agreement or promise upon the part of the A. C. Becken Company to maintain prices on other competitive lines?
 
 
 18
 'A. No, sir, I did not.
 
 
 19
 'Q. Did you have any conversation with him at all with respect to that subject?
 
 
 20
 'A. No, sir.
 
 
 21
 'Q. Did you know at that time anything about the fact that Gemex had previously refused to further sell its products to Becken unless they agreed to maintain prices on competitive lines?
 
 
 22
 'A. No, sir.'
 
 
 23
 It is defendant's theory that it showed conclusively by Keitel's testimony that its refusal to deal with plaintiff did not continue indefinitely. It characterizes that testimony as showing 'its attempt to resolicit the Becken account in 1958'. In reply plaintiff points to the routine character of the call on plaintiff by Keitel, who obviously was seeking a customer.
 
 
 24
 It is clear from the testimony that Keitel did not even know about the unlawful conduct of defendant, which terminated the relationship between the parties, or the litigation which followed. Obviously he did not purport, on behalf of defendant, to restore plaintiff to its former unfettered trading position which had existed prior to defendant's unlawful cutoff of plaintiff in 1956.
 
 
 25
 On April 14, 1958, when Keitel called on plaintiff, defendant was aware that there was pending a complaint charging that it had unlawfully refused to deal with plaintiff. It is not enough, therefore, for defendant to say of Keitel's solicitation of the account in 1958: 'The offer to reactivate this account was in no way conditioned upon any agreement or restraint. * * *' The least that defendant could have done was to have some duly authorized representative conversant with the unlawful act of 1956, offer to resume a distribution of its products by plaintiff expressly unlimited by any unlawful restraint.
 
 
 26
 No evidence introduced or offered by defendant tended to show that it had changed its position from the illegal posture assumed by it in 1956 when it refused to deal further with plaintiff. Defendant argues from this position of nonrepentance, but it cites no persuasive authorities to support it.
 
 
 27
 4. Defendant contends that plaintiff is not entitled to recover damages for losses incurred subsequently to the filing of the complaint. It says that this 'rule' has long been applied to cases arising under the antitrust laws. It cites as its authority Lawlor v. Loewe, 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341 (1915). However in that case Mr. Justice .holmes, at 536, 35 S.Ct. at 172-173, 59 L.Ed. 341, said:
 
 
 28
 'Damages accruing since the action began were allowed, but only such as were the consequence of acts done before and constituting part of the cause of action declared on. This was correct. * * *'
 
 
 29
 The Supreme Court thereby affirmed the court of appeals, Lawlor v. Loewe, 2 Cir. (1913), 209 f. 721. In the latter case the court said, at 728:
 
 
 30
 'We see no error in the admission of testimony showing damages accruing after the commencement of the action. It must be admitted that it is for the interest of all parties that this contriversy be disposed of finally in a single action. If a plurality of actions are brought the defendants will have good ground for the complaint that they are subjected to unnecessary expense and annoyance by being compelled to defend a second action, the trial of which will consume several months. The charge of persecution in such circumstances would not be without justification.'
 
 The court also said, at 729:
 
 31
 'The judge charged the jury on this subject as follows:
 
 
 32
 "The only acts of the defendants for which the plaintiffs may recover damages in this case are such acts as are set forth in the complaint and as were done by the defendants or their agents before the suit was commenced, and the plaintiffs are entitled to recover all damages which are the proximate and natural result of such acts, including such damages as may have continued or resulted therefrom after the suit was commenced by the plaintiffs, but cannot recover in this suit for any damages which are the result of the continuation of the alleged conspiracy after the suit was commenced or which are the result of the performance of any acts in furtherance of said conspiracy after the suit was commenced.'
 
 
 33
 'We think this instruction states the rule correctly; it is based upon authority and common sense. The trial proceeded throughout upon the theory that the only acts of the defendants for which a recovery could be had must have taken place before the suit and must have been acts alleged in the complaint. Damages resulting or continuing from such previous acts might be recovered in the present suit, but no damages resulting from acts committed in furtherance of the conspiracy after the commencement of the suit could be so recovered. In other words, if the damages due to acts done previous to the suit continued thereafter, the plaintiffs could recover, but they could not recover for acts subsequent to the suit or for damages resulting from a continuance of the conspiracy after the commencement of the suit. * * *'
 
 
 34
 Of course no suggestion is made in the case at bar that any conspiracy existed.
 
 
 35
 5. In No. 13759, defendant has appealed from the judgment in favor of plaintiff for $25,000, allowed as attorneys' fees, and costs. Defendant argues that this award is excessive and improper under the circumstances of this case. It states that the original trial occupied one and one-half days, and no discovery was taken prior to trial; that, following the prior appeal, only defendant proceeded with discovery, a brief request for production of documents and a short deposition on one of plaintiff's employees, followed by a two-day hearing by the court on the question of damages. It asserts that any difficulty which plaintiff encountered in proving damages was brought about by the aforesaid distruction of its records during the course of this litigation.
 
 
 36
 The district court, before determining the allowance of attorneys' fees, considered the testimony offered by plaintiff as to a reasonable attorneys' fee in this case, including that of a partner of the lawyer who handled the case for plaintiff in both the district court and this court, who testified that he estimated that he devoted to this case in excess of 200 hours and that the trial attorney spent twice as much time. He also testified that another partner, Mr. Morse, now deceased, and Mr. Arthur Dixon, as well as various associates in their law firm, had spent time on it. No time records were kept.
 
 
 37
 Defendant asks us not to give to the testimony of attorney Edward R. Johnston, who was called by plaintiff and who is admittedly an expert in the antitrust field, the weight given to it by the district court. It submits that we should, based upon the record before us, reverse the judgment order on attorneys' fees and set what we consider a reasonable amount. It calls our attention to the fact that, in comparison to the compensatory damages allowed to plaintiff, an award of $25,000 in attorneys' fees is clearly excessive.
 
 
 38
 We find and so hold that an award of $17,500 in attorneys' fees to plaintiff would be reasonable and that the amount awarded by the district court is excessive.
 
 
 39
 For the reasons herein set forth, in No. 13759 that part of the judgment entered on April 12, 1962 awarding $25,000 to plaintiff is reversed and this cause, as to said judgment, is remanded to the district court with instructions to enter a judgment in the sum of $17,500 and costs of suit in favor of plaintiff; and in Nos. 13577-78, the judgment entered by the district court on September 29, 1961 in favor of plaintiff is affirmed.
 
 
 40
 Affirmed in part, reversed and remanded in part, with directions.
 
 
 
 [1]
 199 F.Supp. 544