Mr. Justice Douglas,
with whom Mr. Justice Black and Mr. Justice Clark agree,
concurring.
As we read the opinion of the Court, it reaffirms the principles of Allen Bradley Co. v. Union, 325 U. S. 797, and tells the trial judge:
First. On the new trial the jury should be instructed that if there were an industry-wide collective bargaining agreement whereby employers and the union agreed on a *687 wage scale that exceeded the financial ability of some operators to pay and that if it was made for the purpose of forcing some employers out of business, the union as well as the employers who participated in the arrangement with the union should be found to have violated the antitrust laws.
Second. An industry-wide agreement containing those features is prima facie evidence of a violation.*
In Allen Bradley Co. v. Union, supra, the union was promoting closed shops in the New York City area. It got contractors to purchase equipment only from local manufacturers who had closed-shop agreements with the union; and it got manufacturers to confine their New York City sales to contractors employing the union’s members. Agencies were set up to boycott recalcitrant local contractors and manufacturers and bar from the area equipment manufactured outside its boundaries. As we said:
“The combination among the three groups, union, contractors, and manufacturers, became highly successful from the standpoint of all of them. The business of New York City manufacturers had a phenomenal growth, thereby multiplying the jobs available for the Local’s members. Wages went up, hours were shortened, and the New York electrical equip *688 ment prices soared, to the decided financial profit of local contractors and manufacturers.” 325 U. S., at 800.
I repeat what we said in Allen Bradley Co. v. Union, supra, at 811:
“The difficulty of drawing legislation primarily aimed at trusts and monopolies so that it could also be applied to labor organizations without impairing the collective bargaining and related rights of those organizations has been emphasized both by congressional and judicial attempts to draw lines between permissible and prohibited union activities. There is, however, one line which we can draw with assurance that we follow the congressional purpose. We know that Congress feared the concentrated power of business organizations to dominate markets and prices. It intended to outlaw business monopolies. A business monopoly is no less such because a union participates, and such participation is a violation of the [Sherman] Act.”
Congress can design an oligopoly for our society, if it chooses. But business alone cannot do so as long as the antitrust laws are enforced. Nor should business and labor working hand-in-hand be allowed to make that basic change in the design of our so-called free enterprise system. If the allegations in this case are to be believed, organized labor joined hands with organized business to drive marginal operators out of existence. According to those allegations the union used its control over West Kentucky Coal Co. and Nashville Coal Co. to dump coal at such low prices that respondents, who were small operators, had to abandon their business. According to those allegations there was a boycott by the union and the major companies against small companies who needed major companies’ coal land on which to operate. Accord *689 ing to those allegations, high wage and welfare terms of employment were imposed on the small, marginal companies by the union and the major companies with the knowledge and intent that the small ones would be driven out of business.
The only architect of our economic system is Congress. We are right in adhering to its philosophy of the free enterprise system as expressed in the antitrust laws and as enforced by Allen Bradley Co. v. Union, supra, until the Congress delegates to big business and big labor the power to remold our economy in the manner charged here.

“It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators. Schenck v. United States, 253 F. 212, 213, aff’d, 249 U. S. 47; Levey v. United States, 92 F. 2d 688, 691. Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act. Eastern States Lumber Assn. v. United States, 234 U. S. 600; Lawlor v. Loewe, 235 U. S. 522, 534; American Column Co. v. United States, 257 U. S. 377; United States v. American Linseed Oil Co., 262 U. S. 371.” Interstate Circuit v. United States, 306 U. S. 208, 227.