JAMES R. SNYDER CO., INC., et al.,
Plaintiffs-Appellants,

v.

EDWARD ROSE AND SONS, INC., et
al., Defendants-Appellees.

No. 75–2233.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1976.

Decided Dec. 14, 1976.

Donald E. Mather, Mather, Glime &
Daoust, Mount Clemens, Mich., Jerry S. Co-
hen, Michael D. Hausfeld, Washington,
D.C., for plaintiffs-appellants.

Irwin Alterman, Hyman & Rice, South-
field, Mich., Joseph T. Brennan, Farmington
Hills, Mich., Robert G. Cutler, David M.
Fitzgerald, Dykema, Gossett, Spencer, Good-
now & Trigg, Detroit, Mich., for defend-
ants-appellees.

Before PHILLIPS, Chief Judge, and ED-
WARDS and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

Plaintiffs brought this suit under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, seeking treble damages and injunctive relief for violation of § 1 of the Sherman Act. 15 U.S.C. § 1. The gist of plaintiffs' complaint is that the defendant-appellees, with other defendant employer associations, conspired with construction trade unions (not named as defendants) to impose the terms of a multi-trade labor agreement upon the plaintiffs for the purpose of forcing them out of business.

Plaintiffs are mason contractors and members of the Detroit Mason Contractors Association. The four named defendants involved in the instant appeal are members of the Builders Association of Metropolitan Detroit (BAMD). These defendants in 1970 each granted a general power of attorney to BAMD as its exclusive agent for the purpose of bargaining with the unions and negotiating a collective contract.[1] BAMD then joined with approximately 24 other construction employer trade associations in designating the Construction Employers Council (CEC) as its bargaining agent. In turn, CEC chose a six-person committee to carry on actual labor negotiations with a committee representing 24 construction trade unions. The two committees did not attempt to negotiate complete labor contracts, but negotiated instead to establish the level of wages and fringe benefits which their principals would pay and receive, respectively. This multi-employer/multi-union bargaining was a new concept in the Detroit area. A number of employers, including plaintiffs, did not participate. Plaintiffs separately negotiated with the Laborers and Bricklayers Unions after the multi-trade agreements had been reached.

On motion for summary judgment by the four-named corporate appellees, the district court, accepting the plaintiffs' contention that the alleged illegal activities affected interstate commerce, found that jurisdiction existed under the Sherman Act. The district court, however, assuming that a conspiracy violative of the Sherman Act might have been entered into at the labor negotiations,[2] granted judgment to the appellees on the basis that Section 6 of the Norris-LaGuardia Act, 29 U.S.C. § 106, precluded finding them liable solely on the existence of the powers of attorney, observing:

> The powers of attorney are the only evidence which plaintiffs present to connect the moving defendants with the alleged conspiracy. These powers of attorney fail to provide any evidence of actual authorization to enter into the conspiracy, let alone clear proof of such authorization. Therefore the moving defendants are entitled to summary judgment.[3]

1. The power of attorney executed by Edward Rose & Sons, Inc. and Practical Home Builders, Inc., reads as follows:

   The undersigned being a member of the Builders Association of Metropolitan Detroit in accordance with Article XVII, Section 8 of the By Laws of said Association which provides as follows:

   In accordance with historic and long established practice, the Association acts as the exclusive collective bargaining agent for all active members and negotiates exclusively for such members all terms and conditions of work, collective bargaining contracts and all other matters relating to employment and labor relations with the building trade unions or other organized labor groups.

   does hereby reaffirm said agency and appoint the Builders Association of Metropolitan Detroit to act as his exclusive agent with power of attorney for all the purposes of bargaining with labor unions, including the execution of all collective contracts relating to wages and all other terms and conditions of work; such agency to continue until expressly revoked in writing.

   The undersigned hereby agrees to abide by all contracts between the Association and labor unions for the term of such contracts.

   The powers of attorney granted by the two other appellees are not substantially different.

2. Actually, no evidence of any conspiracy has been pointed out to us, although the case has been pending six years and there has been extensive discovery.

3. Because the litigation was still pending against the remaining defendants, the district court certified the judgment for immediate entry under Rule 54(b), Fed.R. of Civ.P.

Section 6 of the Norris-LaGuardia Act provides:

> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

Central to the consideration of § 6 is *United Brotherhood of Carpenters v. United States,* 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947). Both parties rely on it. Its proper construction, we think, compels the decision reached by the district judge.[4] There, the Supreme Court reviewed in detail the history of the enactment of § 6. In large part the impetus for the statute originated in the federal courts' alacrity to impose liability on unions for the lawless actions of their members. Particularly, the advocates of § 6 wished to overrule *Lawlor v. Loewe,* 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341 (1915), popularly known as the *Danbury Hatters Case.* In that case, damages were sought from labor unions and their members for an alleged unlawful conspiracy to deprive non-union manufacturers of hats from access to interstate markets. The Supreme Court, speaking through Mr. Justice Holmes, held that traditional rules of agency would suffice to support a jury finding that the unions and their members authorized the allegedly unlawful activities which constituted the antitrust violation. It was this decision which prompted the enactment of § 6 of the Norris-LaGuardia Act. While many attacked the provision as a restriction on the general law of agency in labor disputes, the Senate Committee deemed the statute a new rule of evidence rather than a rule of agency. The Supreme Court in *Carpenters* found it unnecessary to

determine which field of law it altered. Its effect was clear:

> We need not determine whether § 6 should be called a rule of evidence or one that changes the substantive law of agency. We hold that its purpose and effect was to relieve organizations, whether of labor or capital, and members of those organizations from liability for damages or imputation of guilt for lawless acts done in labor disputes by some individual officers or members of the organization, without clear proof that the organization or member charged with responsibility for the offense actually participated, gave prior authorization, or ratified such acts after actual knowledge of their perpetration. *Carpenters,* 330 U.S. at 403, 67 S.Ct. 775.

The defendants in *Carpenters* were local manufacturers of and dealers in millwork and pattern lumber, together with certain unincorporated trade unions and their officials. It was charged the manufacturers and trade unions had conspired to restrain out-of-state manufacturers from selling these commodities in the San Francisco Bay area. In submitting the case to the jury, the district court in its instructions had charged the jury that "the act of an agent done for or on behalf of a corporation and within the scope of its authority, or an act which an agent has assumed to do for a corporation while performing duties actually delegated to him, is deemed to be the act of the corporation". *Carpenters,* 330 U.S. at 407, n. 19, 67 S.Ct. at 782.

The Supreme Court held that this charge was error and that the authorization as spelled out in § 6 called for something different from traditional agency principles:

> We are of the opinion that the requirement of "authorization" restricts the responsibility or liability in labor disputes of employer or employee associations, organizations or their members for unlaw-

---

4. Although *Carpenters* was a criminal conspiracy case, the applicability of its interpretation of § 6 to civil cases is not questioned. *See, United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Ramsey v. United Mineworkers,* 401 U.S. 302, 91 S.Ct. 658, 28 L.Ed.2d 64 (1971).

ful acts of the officers or members of those associations or organizations, although such officers or members are acting within the scope of their general authority as such officers or members, to those associations, organizations or their officers or members who actually participate in the unlawful acts, except upon clear proof that the particular act charged, or acts generally of that type and quality, had been expressly authorized, or necessarily followed from a granted authority, by the association or nonparticipating member sought to be charged or was subsequently ratified by such association, organization or member after actual knowledge of its occurrence. *Carpenters, supra,* at 406–7, 67 S.Ct. at 781.

The history of § 6 and the language of the *Carpenters* decision indicate to us, as they did to the district judge, that liability on the part of a company cannot, under § 6, be established solely by proof of authorization to enter into a lawful collective bargaining agreement. Nevertheless, the plaintiffs in their brief contend that the opinion of the lower court missed the basic point:

> Section 6 of the Norris-LaGuardia Act was never intended to permit corporations to escape liability for the unlawful acts of their express agent. Its purpose was merely to require clear proof that an agency relationship for the challenged undertaking existed and that the agent was acting for and on behalf of the corporation in that undertaking. Once the agency relationship is established by clear proof, the principal is liable for all acts of the agent, lawful and unlawful. Brief for Plaintiffs at 9

■ In essence, therefore, the plaintiffs contend that the "clear proof" requirement of the statute is satisfied solely by the proof that the companies authorized BAMD to act on their behalf in the collective bargaining procedure and that the admitted absence of any other evidence of participation in the alleged illegal acts of the bargaining com-

mittee is unimportant and does not preclude submission of the case to the jury. We are unable to agree and conclude, with the district judge, that summary judgment procedures were appropriate.

■ We agree with the appellants that the clear proof standard embodied in § 6 does not require formal acts of authorization and that an association will not be exculpated by "standing orders disavowing authority on the part of its officers to make any agreements in violation of the Sherman Act . . ." *Carpenters, supra,* at 409, 67 S.Ct. at 783. This is neither the language nor the import of § 6. We understand its meaning as being simply that there must be clear proof that the parties sought to be charged are connected with the alleged wrong: there must be clear proof that the agency extended to the illegal acts. We agree that proof of authorization or ratification can be based upon circumstantial evidence, but that proof, although circumstantial, must nevertheless be clear.

In their motions for summary judgment, the four defendant-appellees submitted affidavits by their chief executive officers. The affidavits generally denied the allegations of the complaint and more particularly denied that the officers had in any way participated in, authorized, ratified, or even been aware of any agreement which allegedly existed with the unions to impose the same terms of the collective bargaining agreement upon the plaintiff companies. The affidavits were as specific as the very general nature of the allegations in the complaint would allow, and we do not conclude that they were deficient on that account. Given the vagueness of the charge and the lack of any overt acts or other specific allegations, we think it was particularly incumbent at this stage of the proceedings, and especially after five years of discovery, for the plaintiffs to come up with at least some evidence from which a circumstantial inference might be made that the defendants authorized, participated in, or ratified an illegal conspiracy. Noth-

ing other than the power of attorney itself was submitted. No pattern or practice was shown or claimed. No history of past negotiations was shown. No conversation or conduct was shown from which such an illicit agreement might be inferred. The specific participants in any agreement were not shown, let alone any connection between them and any agent or authorized agent of the defendant-appellees. It is required that

> when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Rule 56(e), Fed.R.Civ.P.

Plaintiffs on appeal do not contend that summary procedures were inappropriate. Rather at oral argument counsel stated that powers of attorney were alone sufficient to indicate that the four defendants were parties to the alleged conspiracy. The district court similarly noted plaintiffs' legal theory: "The powers of attorney are the only evidence which plaintiffs present to connect the moving defendants with the alleged conspiracy." The absence of other evidence, albeit even circumstantial, is fatal to plaintiffs' appeal. As a matter of law the appellees were entitled to judgment.

Affirmed.